# LANCKTON *v.* THE UNITED STATES.

APPELLATE PRACTICE; APPEALS; PRESUMPTIONS; CRIMINAL LAW; INDICT-
MENT; MOTIVE; INSTRUCTIONS; INTOXICATION.

1. Under Rule V of this court, requiring that a transcript on appeal
shall show in the caption nothing more than the title of the case,
the names of the parties in full and the time of the commencement of
the proceeding, it will be presumed that all proceedings prior to the
filing of an indictment set forth in such a transcript were regular,
and such presumption will continue until rebutted by facts and con-
ditions properly presented in a bill of exceptions.

2. The Supreme Court of this District is a court of general jurisdiction
and its terms are fixed by law, of which this court is bound to take
notice, and it is not necessary to the legality of the sessions of its
several branches that the minutes should recite the appearance of the
clerk and marshal at the opening of the term, or that the sitting was
in the District and in the building designated for the purpose. Regu-
larity in these respects is necessarily presumed.

3. Where the transcript of the record on appeal, in a criminal case,
shows that the grand jury was empaneled at a regular term; that
a foreman was duly appointed and that the indictment upon which the
accused was tried was returned in open court, indorsed " a true
bill," over the signature of the foreman, it must be presumed that
the grand jury empaneled was the grand jury required by the Con-
stitution and the law, and that the true bill returned in open
court was concurred in by the requisite number of the grand jury-
men; and that the foreman's name, as written in the indictment, con-
tains only the initial of his given name, while the minutes recite his
full given name, is a fact of no consequence.

4. The British Statute of 1 Hen. V, Ch. 5 (A. D. 1413), requiring every
indictment to set forth " the estate, or degree or mystery of the de-
fendant," and to aver " the town, hamlet or place or county in which
the defendant is or was conversant," is not in force in this District.

5. An indictment for murder which alleges that the crime was committed
in the District of Columbia, and in a certain house situated therein,
is not insufficient because it omits to allege the precise locality of
the house.

Statement of the Case.

6. It is not error for the trial court, in a murder case, to instruct the jury that it is not necessary for the prosecution to prove a motive, but that absence of proof of motive may be considered as a circumstance in favor of the accused.

7. It is not error for the trial court in a murder case to refuse a prayer for instruction by the accused to the effect that if it were probable that the deceased came to her death from any other cause whatever than from violence inflicted on her by the accused, the jury should find him not guilty, where, in addition to a general charge showing the necessity of proof beyond a reasonable doubt, the court instructs the jury, at the request of the accused, that if the death of the deceased can be accounted for on any other hypothesis whatever, than that she came to her death as a result of injuries inflicted by the accused, it is their duty to acquit him.

8. The refusal of a trial court to grant a prayer for instruction by a defendant indicted for murder to the effect that if the jury find the accused was intoxicated when the offense was committed they might take the fact of intoxication into consideration in determining the grade of punishment which should be inflicted, if error at all, is not prejudicial error, where the accused is convicted of manslaughter only.

9. The voluntary intoxication of a person accused of a crime cannot be considered in determining the character of the crime committed, voluntary intoxication being neither an excuse or palliation for crime, *following* Harris v. United States, 8 App. D. C. 20.

No. 1070.  Submitted May 8, 1901.  Decided May 23, 1901.

HEARING on an appeal by a defendant indicted for murder from a judgment of the Supreme Court of the District of Columbia entered upon the verdict of a jury finding him guilty of the crime of manslaughter. *Affirmed.*

The COURT in its opinion stated the case as follows:

The appellant, James Lanckton, was indicted on May 11, 1900, for the murder of one Betty L. Wren in the District of Columbia. On November 17, 1900, he was convicted of manslaughter, and was subsequently sentenced to imprisonment in the penitentiary for eight years, after motions in arrest of judgment and for new trial had been overruled.

The evidence on behalf of the Government tended to show the following facts: Bettie L. Wren was a clerk in the office

of a pension attorney and was about fifty-four years of age. She occupied a house in the City of Washington, No. 634 E street, southwest. Lanckton was about sixty-six years of age, and first met Mrs. Wren in the office where she was employed. He shortly afterwards went to live in her house by her invitation, and apparently without charge. He claimed to have become engaged to be married to her. He was sometimes intoxicated, and then used abusive language to her, and threatened to kill her and another man who occupied a room in the house. On the night of the 12th of March Mrs. Wren called in a policeman and complained that Lanckton had struck her. He was intoxicated. She, at first, wanted him taken away, but finally consented to his remaining. March 14th she kept her bed, complaining of pain and weakness. She sent for a servant to nurse her, to whom she said, in Lanckton's presence and hearing, and without his denial, that he had struck her. The left side of her face was swollen and one eye closed. March 17th, a physician was called in. He found her in a semi-comatose state. The pupil of one eye was dilated; the other contracted. The left eye was blackened and had an abrasion upon it. She said in the presence of Lanckton that he had struck her a blow. He was drunk, and the physician compelled him to leave the house. She was removed to the Columbian Hospital, in the city of Washington, on March 19th, and died there March 29, 1900. An autopsy made by the deputy coroner, a competent surgeon, disclosed a large and fresh blood clot within the left side of the skull, and an exceedingly small one at or in the base of the brain at the back of the head. Other organs of deceased were in apparently healthy condition. The opinion formed was, that the blood clots were the result of a blow received upon the left side of the head; or might have been caused by falling and striking the head upon the floor.

An aged, crippled and practically deaf and dumb sister of the deceased was examined by the Government, and was the only witness who saw the assault. She testified by signs, and these were interpreted by a servant who was familiar with them and could communicate with her.

Before she was permitted to be introduced as a witness, the justice presiding caused her to be carefully examined by Doctor Gallaudet, of the Institute for the Deaf and Dumb, who pronounced her competent to testify, and the servant competent to interpret her signs. The court was satisfied from her signs that she comprehended the nature of an oath. No objection was offered to her competency, or to that of the interpreter. Her testimony was very brief, indicating that she saw Lanckton strike her sister on the head with his hand or fist.

Lanckton, testifying on his own behalf, denied striking the deceased. He attributed her injury to a fall that she had received. He said that she had been complaining of weakness, and asked him to assist her to rise from her bed and sit upon a stool by its side.

Whilst seated upon the stool, she fell to the floor, striking her head, and was unconscious for a time. He also denied that she had charged him with striking her. He said he had been drinking heavily before and after the 12th of March, and that he was intoxicated when ordered by the physician to leave the premises.

Medical experts, on behalf of the accused, testified that the formation of the blood clots might have been, and most probably had been, caused by a diseased state of the blood vessels of the brain.

They had not seen the deceased, either before or after death, and formed their opinions on the general evidence and the statement of the deputy coroner of the details of the autopsy. They thought his opinion unreliable because he had not made an examination of the brain and the blood with a microscope.

On cross-examination of the defendant it appeared that he had spent the bulk of his life in a circus as an exhibitor of feats of strength.

The defendant was duly arraigned and pleaded not guilty, but was, subsequently, permitted to withdraw the plea and file the following motion to quash the indictment:

" 1. Said indictment purports to have been found and re-

turned by a grand jury into the Supreme Court of the District of Columbia, holding a criminal term, known as the April term, A. D. 1900, and there is no record in said court showing that the same, holding a criminal court for the April term, 1900, was ever organized as required by law.

" 2. There is nothing in the record showing that on the first day or any other day of the April term, 1900, of said court there was present, at the time of any organization thereof, any officer other than the presiding judge.

" 3. That part of the record of the April term, 1900, of said court purporting to show the proceedings before the Supreme Court of the District of Columbia, holding a criminal court, division No. 1, for the trial of crimes and offenses arising within the District of Columbia, does not state or show that there was any clerk of said court or deputy clerk of said court or any United States marshal or deputy United States marshal for said District present, nor does the record of said court show who of the members constituting said court were present, or who went to constitute the court, nor does it show where the said court was held.

" 4. There is nothing in the record of the Supreme Court of the District of Columbia for the April term, 1900, which shows that said court was held at the place fixed and designated by law for the holding of said court.

" 5. The record does not show that there was at the April term, 1900, of the Supreme Court of the District of Columbia a grand jury, duly and legally organized, with authority to discharge the legal duties incumbent upon a grand jury in and for said District, for the April term, 1900, of said court.

" 6. The record does not show that the said indictment was found and returned into court by a legally constituted grand jury.

" 7. The record does not show the place where the court was sitting at the time which said indictment purports that it was returned into court, nor does it show what officers of the law then constituted said court.

" 8. There is in the minutes purporting to be the minutes

of division 1 of the Supreme Court of the District of Columbia for the April term for the trial of crimes and offenses arising within said District, at the April term of the court for the year 1900, that which purports to be an organization of the grand jury, wherein it is stated ' William H. H. Cissel is appointed by the court as foreman of the grand jury,' and the indictment in this case is marked ' A true bill. W. H. H. Cissel, foreman.' Said indictment is not marked ' A true bill. William H. H. Cissel, foreman.'

" 9. There is nothing in the record which shows that said indictment was found with the concurrence of at least twelve grand jurors, nor that it was returned into court in the presence of at least twelve grand jurors.

" 10. There is no record of said court showing that the grand jury ever found or returned into court any valid legal indictment against said defendant.

" 11. There is not made or stated in said indictment, as by law is required to be, the estate or degree or mystery of the said defendant, nor of the town or hamlet or place or county of which he was and in which he was conversant at the time of the alleged finding of said bill of indictment, to wit, May 11, 1900.

" 12. It is not stated or averred in said indictment that the said James Lanckton was of or conversant or residing in the county of Washington, District of Columbia, on May 11, 1900, the time at which said indictment was filed in said court.

" 13. It is not shown or stated in said indictment that the grand jurors comprising the grand jury for said term of said court were in or of the county of Washington, in the District of Columbia.

" 14. There is nothing in the record of said court, nor in said indictment, which shows that the grand jurors who it is alleged found said indictment and returned it into court were legal or competent grand jurors, either of the county of Washington or the District of Columbia.

" 15. It is alleged in said indictment that the said James Lanckton, on March 12, 1900, at the District aforesaid, and

23

in a certain house there situate, did feloniously, willfully, and with malice aforethought make an assault upon one Betty L. Wren.   The said indictment is insufficient in that it does not more particularly locate and describe the said certain house, and said statement in said indictment is vague, indefinite, and insufficient in law."

This motion is incorporated in the bill of exceptions, which shows that it was overruled and that exception was reserved.   The records of the court relating to the empanneling of the grand jury and the return of the indictment are not set out in the bill of exceptions.   The printed record prepared under the rules of this court shows that the indictment was filed in open court May 11, 1900.   It contains the usual recital of presentation by the grand jurors of the District of Columbia, and sets out the offense of murder in two counts. The assault is charged as of the 12th of March, 1900, and the death as its result on March 29th, in the District of Columbia, without further specification of place.

The indorsement on the back of the indictment shows number and title of case, names of the witnesses and concludes as follows:   "A true bill" (signed) "W. H. H. Cissel, foreman."

After the motion was overruled, the defendant was not rearraigned, but entered a plea of "not guilty" and the trial proceeded.   After verdict, a motion in arrest of judgment was filed, founded on the objections set out in the motion to quash, which was also overruled, with exceptions reserved. Motion for new trial was then filed and overruled.

[The further material facts will be found stated in the opinion.— REPORTER.]

*Mr. Fred Beall* for the appellant.

1. This is an appeal and not a writ of error, and being an appeal it brings up, or should bring up, the entire record from the court below, except as restricted by Rule 5 of this court. Appeals had their origin in the civil law, and remove causes entirely from a lower to a higher court, subjecting the law

and facts to review. *United States* v. *Goodwin,* 1 Cranch, 110. There are no presumptions in favor of the jurisdiction of the courts of the United States. The record must show affirmatively the necessary jurisdictional facts. *Ex parte Smith,* 94 U. S. 455; *Hopt* v. *Utah,* 114 U. S. 488.

2. The record in this case is defective, (1) in not stating the time of holding the court; (2) in not stating the place; (3) in not stating that the indictment was returned into the court by the grand jury; (4) in not showing an arraignment; (5) in not showing that the defendant plead to the indictment. 1 Bishop's New Crim. Proc., Secs. 1341–1347; *McKinney* v. *People,* 2 Gilman (7 Ill.), 540; 1 Chit. Crim. Law, 327, 720; *Garter* v. *State,* 46 Miss. 44; *Mulligan* v. *State,* 47 Miss. 304; *Grandison* v. *State,* 2 Humph. 451; *Carpenter* v. *State,* 1 Morris State Cases (Miss.), 126; 2 Hawk. P. C., Sec. 128; 2 Hale, 166; Whart. Crim. Pl., Sec. 92; *Fitzgerald* v. *State,* 4 Wis. 395; Rule 11, Sup. Ct. D. C.

3. The indictment is insufficient. The Statute of 1 Henry V, Ch. 5, Sec. 1, which is found on page 460 of the Compiled Statutes in force in the District of Columbia, as brought forward from Alex. Brit. Stat. 214, 216, and Kilty's Rep. 226, requires that in all indictments there shall be made the additions of the defendant's estate or degree or mystery, and of the towns or hamlets or places and counties of which they were or be, or in which they be or were conversant, and the failure to do so will cause an abatement of the indictment. That statute was in force in the State of Maryland in 1801, and has been brought forward properly as a part of the laws of the District of Columbia. It has never been repealed by any act of Congress nor has it been modified in any way unless by section 1025 of the United States Revised Statutes, and that statute does not repeal the old English statute. See *Hughes Case,* 2 H. & McH. 479; *Hammond* v. *State,* 14 Md. 135; *Com.* v. *France,* 2 Brewst. 568; *State* v. *Moore,* 14 N. H. 451; 2 Va. Cases, 374 and 401; *State* v. *Bishop,* 15 Me. 152; *Com.* v. *Lewis,* 1 Metc. 151; *Com.* v. *Jackson,* 1 Grant, 262; 4 Bac. Abr. 315; Whart. Crim. Law, Sec. 24; Archb. Crim. Pl. & Pr. 243, and notes.

4. The indictment alleges that the offense was committed " at the District aforesaid," referring to the caption of the indictment, and " in a certain house " situated in said District. It is insisted that the allegation of place is insufficient under the rules of practice, as recognized in the common law by the United States Supreme Court. *Ledbetter* v. *U. S.*, 170 U. S. 606; 1 Chit. Crim. Law, top p. 195; 1 Chit. Pl. (4th ed.) 249; *Com.* v. *Springfield*, 7 Mass. 15.

5. The record does not show that the defendant entered any plea to the indictment after the overruling of his motion to withdraw his plea of not guilty and to enter a motion to quash the indictment. It is absolutely necessary in cases of felony that the records show affirmatively that the accused was arraigned and plead in person to the indictment. *Cachute* v. *State*, 50 Miss. 165; *Yundt* v. *People*, 65 Ill. 372; *Com.* v. *Harvey*, 103 Mass. 451; 1 Bishop's New Crim. Proc., Sec. 1354; *Early* v. *State*, 1 Tex. App. 248; *Stacey* v. *State*, 3 Tex. App. 121; *People* v. *Corbett*, 28 Cal. 325; *People* v. *Lightner*, 40 Cal. 220. The record does not show what issue was submitted to the jury, and without a plea there was, in fact, no issue submitted, and since the verdict must always respond to the issue, if there was no issue there could be no legal verdict.

6. When all the testimony had been introduced, the defendant requested the court to instruct the jury to return a verdict of not guilty. This the court refused, and to the action of the court in refusing to so instruct the jury the defendant excepted. This request should have been granted. There is no testimony whatever in the record which shows or tends to show: 1st. That the defendant ever struck or beat the deceased with his fist, or that he ever threw her down on the floor. 2d. There is no testimony in the record which tends to show with what the defendant ever struck or beat the deceased, or the means or manner by which she received any wound, whether mortal or otherwise. 3d. There is no evidence which establishes the fact that the defendant ever inflicted upon the deceased a mortal wound. 4th. There is no proof which shows that the deceased died in the District of Columbia.

7. There is no proof in the record which establishes that the deceased came to her death as the result of violence. That she was killed or that she died from other than natural causes has not been proven. It is never competent to prove the *corpus delicti* by the extra-judicial confessions of the accused, nor are confessions admissible until the fact that a crime has been committed has been established. Facts ascertained by reason of an accused's confessions may be taken into consideration in establishing the *corpus delicti,* but the confessions of a party not made in court, or in some judicial proceeding but to an individual uncorroborated by circumstances, and without proof *aliunde* that a crime has been committed, will not justify a conviction. The *corpus delicti* must be proved beyond a reasonable doubt by evidence other than the extra-judicial confessions of the accused. *Robinson* v. *State,* 12 Mo. 592; *State* v. *Scott,* 39 Mo. 424; *Pitts* v. *State,* 43 Miss. 472; *Stringfellow* v. *State,* 26 Miss. 157.

8. The indictment charges that the decedent died in the District of Columbia, but there is no proof of that allegation. The proof shows that she was carried to the Columbian University Hospital on March 19th, and there was an autopsy performed on her body at that hospital on March 29th, but there is no proof as to when or where she died. She might have been taken to the Johns Hopkins, at Baltimore, or anywhere else, as for that matter, where she died on March 27th or 28th, and then her remains brought back after death to the Columbian University Hospital. It is only a matter of inference that she died at the hospital in the District of Columbia. The place of her death is under the frame of the indictment a part of the venue, and the venue is a part of the crime, and must be proven. *Moore* v. *State,* 55 Miss. 422.

*Mr. Ashley M. Gould,* United States Attorney for the District of Columbia, for the United States:

1. The record brought up on this appeal does not purport to set forth the organization of the criminal term of the Supreme

Court of the District of Columbia, nor the empaneling of the grand jury. Under the rules of this court, it is rendered unnecessary to set out any of these matters of record unless it is desired to bring before this court some specific point directed against either the validity of the organization of the court or the constitution of the grand jury. Rule No. 5 of the rules of this court. The record as certified by the clerk of the Supreme Court of the District fully sets forth all jurisdictional facts. *Young* v. *State,* 6 Ohio, at p. 436; *Turns* v. *Commonwealth,* 6 Metc., at p. 233.

2. It is contended, however, by learned counsel for appellant, in his motion to quash, that the indorsement by the foreman of the grand jury upon the indictment of the words "A true bill " was of no effect, for the reason that only the initial of the Christian name of said foreman was signed by him. But it has been repeatedly held that the initials of the Christian name of the foreman are sufficient. *Hudstill* v. *State,* 7 Ga. 2; *Wassels* v. *State,* 26 Ind. 30; *State* v. *Taggart,* 38 Me. 298; *Com.* v. *Gleason,* 110 Mass. 66; *Easterling* v. *State,* 35 Miss. 210. When the record discloses that an indictment was signed by the prosecuting attorney, indorsed "A true bill " by the foreman of the grand jury, and filed by the clerk, it is sufficient to show that the indictment was duly returned and presented in open court. *State* v. *Jones,* 2 Kan. App. 1; *State* v. *Lord,* 118 Mo. 1.

3. It is next contended that the indictment is fatally defective for the reason that it fails to allege the defendant's " estate, degree, or mystery, and of the towns, or hamlets, or places and counties " of which he was conversant. The necessity for such additions to defendant's name, it is claimed, arises from the statute of 1 Henry V, c. 5, known as the " Statute of Additions," which is alleged by learned counsel to be in force in this District. But counsel for appellant has waived this defect, if it be a defect, by failing to raise it in the court below by a plea in abatement and tendering therein the proper degree or mystery of the defendant. The omission at most amounts to a misnomer of the defendant, and it is elementary law that a misnomer of the de-

fendant does not render the indictment fatally defective, but that objection on that ground can be taken only by a plea in abatement, which must give the true name of the defendant. Under the above-cited statute of 1 Henry V, c. 5, the same rule applies where an addition is omitted or misstated. The appellant, having failed to give his degree or mystery in his motion to quash, cannot, after that motion has been overruled, plead not guilty under the name given in the indictment, and after verdict raise the question of misnomer. 1 Chit. Crim. Law, star p. 204. But a perusal of the statute in question makes it very evident that it has no application to conditions now existing within the District of Columbia. *State* v. *McDowell,* 6 Blackf. 49. It is further respectfully suggested that the classification of citizens of this country by their " degrees " or " mysteries," when they appear before the courts, is not in harmony with the spirit of our institutions. Such a classification and designation at this day, when all men are equal before the law and when social distinctions have no place in courts of justice, would not only be repugnant to our theories of the administration of the law, but would be utterly useless — mere forms — serving no legal purpose whatsoever. The reason of the rule failing, the rule itself should be abrogated. If this ancient law should be admitted to be in force in this District, its provisions would be but matters of form, and the failure to insert them in indictments would be cured by section 1025 of the Revised Statutes of the United States. So far as giving the addition of the place in which the defendant has been conversant, it has always been held, under the statute in question, that it is proper to describe him as of the place where the offense was committed, even though he may in fact live elsewhere, because he is considered as having been conversant in that place. 1 Chit. Crim. Law, star p. 210.

4. The indictment in this case charges the appellant with the commission of the crime " at the District aforesaid and in a certain house there situate." Counsel for appellant insists that this allegation of place is insufficient, and that the pleader should have designated the particular part of the

District of Columbia in which the fatal blow was struck. He cites no adjudicated case which sustains this contention. To the contrary, see *Com.* v. *Tolliver,* 8 Gray, 386 (followed in *Com.* v. *Creed,* 8 Gray, 387, and in *Com.* v. *Lavery,* 101 Mass. 207); Whart. Crim. Pl. & Pr. (8th ed.), p. 139, and cases cited; *O'Connell* v. *State,* 6 Minn. 279; *State* v. *Moore,* 24 So. Car., at p. 155; *Carlisle et al.* v. *State,* 32 Ind., at p. 56. The opinion of the Supreme Court in the case of *Ledbetter* v. *United States,* 170 U. S. 606, is not in conflict with the doctrine established in the State courts.

5. It is not doubted that the rule as to proof of the *corpus delicti* is well established in the criminal law of this country; but it does not mean, as argued by counsel for appellant in his brief, that the *corpus delicti* must be proven beyond a reasonable doubt in order that evidence of defendant's admissions or confessions may be introduced. See *People* v. *Jones,* 55 Pac. Rep. 698; *Gantling* v. *State* (Fla., 1899), 26 South. Rep. 737; *Johnson* v. *Com.,* 81 Ky. 325; *State* v. *Patterson,* 73 Mo. 695, at p. 712; *Zoldoske* v. *State,* 82 Wis. 580, at p. 596; *Gray* v. *Com.,* 101 Pa. St. 380; *United States* v. *Williams,* 1 Cliff. 15; *Best* on Presumptions, Sec. 205; Wills' Circumstantial Evidence, 117, 118.

6. It is further contended that the proof fails in not establishing the fact that deceased died within the District of Columbia. While the place of the death of deceased is not material if the fatal blow was struck within the jurisdiction of the court (*United States* v. *Guiteau,* 1 Mackey, 498, at pp. 526 to 545), yet the proof is complete that deceased died at the Columbian Hospital, in this city. See *People* v. *Jaehne,* 103 N. Y. 182, at p. 199.

7. Complaint is made of the first instruction given to the jury at the request of the Government, with the explanation thereof. This instruction, together with the explanation, are fully justified by the language of the Supreme Court in the case of *Pointer* v. *United States,* 151 U. S. 396.

8. It is contended that the court erred in rejecting the nineteenth instruction requested by the defendant in regard to the intoxication of appellant. It is understood that he con-

cedes that, in so far as said instruction was offered for the purpose of securing from the jury a qualified verdict on account of the intoxication of appellant, any error which may have been made in refusing it for that purpose is tolled by the fact that appellant was convicted only of manslaughter, but the instruction as drawn is undoubtedly contrary to the doctrine laid down by this court in the case of *Harris* v. *United States,* 8 App. D. C. 20.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The first assignment of error is founded on the objections set out in the overruled motion to quash the indictment. These are stated in full above and are substantially that: There is no record showing that a court was organized at the April term, 1900, or the presence of any officer but the presiding judge on the first, or any subsequent day of the April term; the record does not show that the said court was held at the place designated by law for holding said court; the record does not show that a grand jury was duly and legally organized at said April term; or where the court was sitting at the time; or that the indictment was returned by a legally constituted grand jury; the record does not show that the indictment was presented with the concurrence of at least twelve grand jurors.

There was no plea in abatement, and the motion to quash contained no allegation that, as a matter of fact, there had been no grand jury lawfully empanneled, or no lawful presentment of the indictment. The objection was confined to the suggestion that the recorded minutes of the trial court did not disclose these necessary facts with technically sufficient precision.

The minutes referred to were made by the direction, and were under the eye, of the justice presiding at the trial, and had he not been satisfied of their sufficiency, he had the power, and presumably would have exercised it, to amend them according to the facts that were necessarily within his own actual knowledge. Rule V of this court requires that

the transcript of the proceedings prepared for appeal shall show in the caption nothing more than the title of the case, the names of the parties in full, and the time of the commencement of the suit or proceeding; and that has been conformed to. Consequently there is nothing in the record before us by which to test the sufficiency of the actual entries of the minutes, either in form or substance, beyond the indictment itself with its recitals and indorsements, and the recital of its presentation in open court on a day of the April term. The transcript containing a formal indictment duly filed in open court in regular term, raises the presumption of regularity in all the proceedings prior thereto, which must continue until rebutted by facts and conditions properly presented in a bill of exceptions.

The bill of exceptions contains nothing more than the motion to quash, the action overruling it and the reservation of an exception thereto. Turning to the recitals of the motion itself and accepting the facts stated therein as true, together with all reasonable deductions therefrom, we cannot find that the court erred in overruling it.

The Supreme Court of the District is a court of general jurisdiction, and its terms are fixed by law, of which we are bound to take notice; and it is not necessary to the legality of the session of its several branches that the minutes should recite the appearance of the clerk and marshal at the opening of the term, or that the sitting was in the District and in the building designated for the purpose. Regularity in these respects is necessarily presumed. It appears from the recitals of the motion that a grand jury was empanneled at the April term; that a foreman was duly appointed, and that an indictment in due form was returned in open court indorsed, " a true bill," over the signature of the foreman. From these it must be presumed that the grand jury empanneled was the grand jury required by the Constitution and the law, and that the true bill returned in open court was concurred in by the requisite number. That the foreman's name, as written, was W. H. H. Cissel instead of William H. H. Cissel, as recited in the minutes,

is a fact of no consequence. In our opinion, the record shows, substantially, all that is required to sustain a conviction in an appellate court: A formal indictment presented and filed as a true bill; an arraignment and plea; trial, verdict and sentence. *Pointer* v. *United States,* 151 U. S. 396, 418, 419; *Crain* v. *United States,* 162 U. S. 625.

2. The eleventh and twelfth specifications of the motion to quash attack the sufficiency of the indictment upon the following grounds, substantially: 1st. It does not set forth " the estate, or degree or mystery " of the defendant; 2d. It does not aver " the town, hamlet or place or county in which the defendant was conversant."

These are founded on the requirements of the ancient English statute of 1 Hen. V, Ch. 5, (A. D. 1413) which reads as follows:

" That in every original writ of actions personals, appeals, and indictments, and in which the exigent shall be awarded in the names of the defendants in such writs original, appeals and indictments, additions shall be made of their estate · or degree, or mystery, and of the towns, or hamlets, or places, and counties, of which they were or be, or in which they be or were conversant; (2) and if by process upon the said original writs, appeals, or indictments, in which the said additions be omitted, any utlagaries be pronounced, that they be void, frustrate and holden for none; (3) and that before the utlagaries pronounced, the said writs and indictments shall be abated· by the exception of the party, wherein the same the said additions be omitted. (4) Provided always, that though the said writs of additions personals be not according to the records and deeds, by the surplusage of the additions aforesaid, that for that cause they be not abated; (5) and that the clerks of the chancery, under whose names such writs shall go forth written, shall not leave out, or make omission of the said additions as is aforesaid, upon pain to be punished and to pay a fine to the king by the discretion of the chancellor; (6) and this ordinance shall begin to hold place at the suit of the party, from the feast of St. Michael next ensuing forward."

The contention that this statute was in force in Maryland at the time of the cession, and, as such, was continued in force by the terms of the act of Congress of February 27, 1801, has some support, it must be admitted, in the authorities cited by counsel.

It appears in full in the Compiled Statutes of the District (p. 460, Sec. 83); and in 1790, the General Court of Maryland is reported as having quashed an indictment because of the omission of the additions therein required. *State* v. *Hughes,* 2 H. & McH. 322. Bishop says, however, that in a more extended report of that case by Kilty, it is said: " A reference was made by one of the judges to several acts of assembly in which the process of outlawry was mentioned." 1 Bishop's Crim. Proc., Sec. 674, note 2.

The question does not appear to have again arisen, and the statute was expressly repealed by act of legislature as late as 1852. See statement in *Hammond* v. *State,* 14 Md. 135.

Its existence was recognized also in the following States: Pennsylvania, New Hampshire, Maine and Virginia. *Report of Judges,* 3 Binney, 595, 614; *Com.* v. *Jackson,* 2 Grant's Cas. 262; *State* v. *Moore,* 14 N. H. 451; *State* v. *Bishop,* 15 Me. 122; *State* v. *Nelson,* 29 Me. 329, 334 (stating statutory change); *Com.* v. *Sims,* 2 Va. Cas. 374; *Com.* v. *Clark,* Idem, 401. In the last case decided in Virginia (A. D. 1823) it was said that the statute had been re-enacted in that State February 26, 1819, except in so far as the estate or degree " are inconsistent with the principles of our government." In Kentucky it was re-enacted in 1796, but is " expressly confined to indictments in which the *exigent* may be awarded and outlawries pronounced." *Com.* v. *Rucker,* 14 B. Monroe, 184. And for that reason its application to the indictment in that case was denied.

Despite these supporting authorities, we cannot agree that this statute was in force and effect in Maryland, after the Revolution, in controlling the forms of indictments; and that, as such, it was continued in force in the District of Columbia by the act of Congress of February 27, 1801.

The statute was passed in mitigation of some of the evils

of the cruel process of outlawry that, at certain stages of proceedings, civil and criminal, followed the failure of the defendant to appear, and was enacted in answer to petitions that no man might be outlawed without his sur-name, and the name of his town and county.

The object of the statute was to enable the person against whom the process ran, to be identified and thus prevent oppressions that had formerly resulted from want of certainty of description. 2 Reeves' Eng. Law (Finlason), 519, 520; 4 Bl. Com. 306. See also *Morgan* v. *State,* 15 Ala. 556, 559; *Com.* v. *Rucker,* 14 B. Monroe, 184; *State* v. *McDowell,* 6 Blackford, 49.

The *exigent* was the first process in outlawry and the statute, it will be observed, is limited to cases " in which the *exigent* shall be awarded."

Founded, then, on distinctions of estate and condition — *i. e.,* rank in life — and intended to operate only where outlawry might be declared, the life of the statute passed with the sudden subversion of rank and the gradual disappearance of the barbaric process of outlawry. No conditions whatever remained to furnish foundations for its application or operation. 1 Bishop's Crim. Proc., Sec. 673; *State* v. *McDowell,* 6 Blackford, 49; *Com.* v. *Rucker,* 14 B. Monroe, 184; *Morgan* v. *State,* 15 Ala. 556, 559.

It is possible, also, that some reasons for the requirement, in ancient indictments, of the additions of estate or condition, and mystery (*i. e.,* trade or occupation), inhered in the special privileges of barons and knights to be arraigned by and before their peers, as well as in the benefit of clergy that was extended to certain ranks and other privileged persons.

It is proper to add, that, if we were inclined to the view that the aforesaid statute was in force in this District, because not expressly repealed, we would, nevertheless, sustain the indictment, for the reason that we could not agree to the contention that the averment of the addition was made, and must, therefore, necessarily, continue to be regarded as, matter of substance and by no means of form. Being

matter of form, it would be cured by the provisions of section 1025, R. S.

3. The last objection to the indictment is to the want of particularity in the allegation of the place of the commission of the crime. It alleges that the offense was committed in the District and in a certain house situated therein, but omits the precise locality of the house. The contention is that the location of the said house should have been averred, if not by square, street and number, at least by situation in the county or in the city of Washington, and by section thereof. Considering the nature of the offense charged in the indictment we see no reason for such particularity of statement. The allegation of place is necessary only as fixing the venue. It has no relation to the fact and constitutes no part of the description of the offense. In England, and anciently, the averment of the particular hamlet, township or place in the county was important because in the early days of jury trial, the jurors, for reasons directly opposed to those controlling the modern practice, were always summoned from the vicinage.

In and before Blackstone's time, the allegation of the particular township or place had become immaterial, that is to say, a mistake therein, like that in date, was immaterial, provided the place was within the jurisdiction of the court. 4 Blackst. Com. 306.

In this country it has been generally held that an indictment is sufficient which avers the commission of the offense in the jurisdiction of the court without specification of the particular locality. See cases cited on the brief of the District Attorney, and in *Ledbetter* v. *United States,* 170 U. S., at pp. 613, 614.

Certain language in the opinion in the last-mentioned case is relied on by counsel for the appellant, as showing the rejection, by the Supreme Court of the United States, of the doctrine above stated. The indictment was for carrying on the business of a retail dealer in liquors without license, " in the County of Appanoose in the Southern District of Iowa and within the jurisdiction of this court."

Objection to the want of particularity of place was not taken by motion to quash, or on the trial, but by motion in arrest of judgment, and the court held that it was properly overruled. In the opinion, it was said: "Properly speaking, the indictment should state not only the county, but the township, city or other municipality within which the crime is alleged to have been committed. But the authorities in this particular are much less rigid than formerly." Then, after referring to the reasons which in England dictated such particularity until abolished by statute, as well as to the American cases on the point, the opinion concluded in these words: " We do not wish to be understood as approving the practice that was pursued in this case, or even as holding that this indictment might not have been open to special demurrer for insufficiency as to the allegations of time and place, but upon motion in arrest of judgment we think it is sufficient."

This intimation of dissent from the doctrine of the cases that had been cited, if such it can be called, must necessarily be viewed in the light of the particular case under consideration. The carrying on of the business charged, implied continuing acts, for a time at least, at some certain place of business. Cases of the kind might be imagined where it would be unfair to charge the commission of the offense in a great county merely, when the particular place implicated by the evidence on which the bill was found, must necessarily be within the knowledge of the grand jury.

Situations might be imagined as likely to occur in some such classes of cases that would, by analogy, bring them within the rule applicable to those offenses where time and locality may both, in greater or less degree, enter into the description.

In this case, the locality of the house had no relation whatever to the offense charged, and failure to aver it could by no possibility have misled the defendant or prejudiced his defense.

4. The next error in order of assignment asserts the insufficiency of the evidence to show either that the deceased

died in the District of Columbia, or that her death was the result of a blow inflicted by the accused.

(1) There was direct proof that the injuries of deceased were received in the District of Columbia, and that she died in the Columbian Hospital. Former evidence of her removal to that hospital, before death, showed it to be situated in the District.

The consideration of this point, it may be added, is not intended to convey an intimation that the offense would be either complete or incomplete, in our opinion, without proof of the death, as well as the infliction of the injury resulting therein, in the District of Columbia. In our view of the testimony, that question could not arise.

(2) A brief statement of the general purport of the evidence, relied on by both prosecution and defense, has been given above, and we think it unnecessary to review it here. It is sufficient to say that there was evidence tending to establish the necessary facts from which, if believed by them to be true beyond a reasonable doubt, the jury had a right to find that a blow unlawfully given by the accused was the proximate cause of the death of the deceased.

We have nothing to do with the credibility of the witnesses and the respective weight of their testimony. These were passed upon by the jury and their verdict was approved by the justice who presided at the trial.

We are of the opinion that the court did not err in refusing to direct a verdict of not guilty.

5. We come now, in conclusion, to examine certain other exceptions taken to the action of the court in giving and refusing instructions to the jury upon the law applicable to the evidence submitted for their consideration.

(1) The court instructed the jury that it was not necessary for the Government to prove a motive; but that absence of proof of motive might be considered as a circumstance in defendant's favor. In this there was no error. *Pointer* v. *United States,* 151 U. S. 396, 413, 414.

(2) Nor was it error to refuse a special instruction to the effect that, if it were probable the deceased came to her

death from any other cause whatever than from violence
inflicted upon her by defendant, they should find him not
guilty; because in addition to a general charge showing the
necessity of proof beyond a reasonable doubt, the court has
also given nine elaborate special instructions on the sub-
ject, at request of defendant, which more than covered every
phase of the case.    The following is one of these:  " The
jury are further instructed that if after a full, careful con-
sideration of all the evidence introduced before them that
the death of Mrs. Betty L. Wren may be accounted for on
any other hypothesis whatever, than that she came to her
death as a result of injuries inflicted by the defendant, then
it is the duty of the jury to acquit the defendant."    The
court was more than liberal in respect of the right of the
accused to the benefit of his presumption of innocence, until
removed by evidence beyond all reasonable doubt.    *Wallace
v. United States,* Present Term.

(3) The last special prayer refused reads as follows:

" 19.  The court instructs the jury that while as a matter of
law voluntary drunkenness is not within itself a defense for
a crime committed, and yet if the jury in this case should be
satisfied from the evidence that the defendant did strike the
deceased, Bettie L. Wren, while in a state of intoxication,
they are authorized to take the fact of his intoxication into
consideration in determining the character of the crime com-
mitted and the grade of punishment which should be in-
flicted, as explained in other instructions given by the court
in this case."

The contention is that this prayer was a proper instruc-
tion to the jury upon the following grounds.— First: The
jury had a right to take into consideration the intoxication
of the accused in the exercise of their power, by recom-
mendation in their verdict, to reduce the sentence for mur-
der from death to imprisonment for life.

Second: That intoxication may be considered in deter-
mining the character of the crime committed.

Were the soundness of the first ground conceded, the
24

error would be harmless, because the accused was not convicted of murder, but of manslaughter only.

The second ground is inadmissible. We have heretofore determined, upon full consideration, that " voluntary intoxication is neither an excuse nor a palliation for crime." *Harris* v. *United States,* 8 App. D. C. 20, 26.

Having found no error in the proceedings on the trial the judgment will be affirmed. It is so ordered.

*Affirmed.*