438

## BELL v. UNITED STATES.
### No. 5286.

Court of Appeals of District of Columbia.
Argued Jan. 7, 1931.
Decided Feb. 2, 1931.

E. R. Kelly, of Washington, D. C., for appellant.

Leo A. Rover and James F. Hughes, both of Washington, D. C., for the United States.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice.

The appellant, Cardoza Bell, defendant below, was indicted and tried for murder in the first degree, charged with unlawfully killing one Alice Metz. He was found guilty as indicted, and was sentenced to death. He has appealed from that judgment.

The present record contains the testimony introduced at the trial, and in order to pass upon the assignments of error it is necessary to set out the salient facts thereby disclosed.

It convincingly appears from the evidence that the defendant and the deceased had been living with each other as man and wife for a period of thirteen months prior to the homicide, although the deceased was at the same time the wife of another man; that shortly before her death the deceased had returned to her husband, and the accused thereupon had repeatedly threatened to kill her, saying at one time that he loved her and that before he would see her with any one else he would kill her; that at about 10 o'clock in the forenoon of the day in question the accused drove alone in an automobile to the taxicab office where the deceased was working; that when he first arrived there another person was in the office with her, and the accused then drove around the block and came back, finding the deceased alone in the office; that he then got out of his automobile and reaching into the back of it took out a shotgun and went with it into the office; that an instant later the report of the gun was heard and the accused came out of the office with the shotgun in his hands and drove hurriedly away, leaving the body of the deceased lying on the floor with a gunshot wound in her side, from which she died the same day. It is in evidence that the accused was arrested about 1 o'clock of that day, and made a confession to the police in which he stated, among other things, "that the girl had throwed him down for another man, and he told her that if he couldn't have her, nobody else could," also that when he shot her he was four or five feet from her, that he intended to kill her, and was glad he did it. It is stated by a witness that the police officer at this time told the accused that he could make a statement if he wanted to, but his statement would be used against him, that he did not have to make a statement if he did not care to, that witness did not hear anybody tell him that it would be better for him to make a statement, and that no one used any force or violence at all towards him prior to his making the statement.

The defendant testified at the trial that he went to the taxicab office upon the occasion in question to deliver the shotgun to the deceased in order that it might be returned to its owner, a neighbor, who had pledged it as security for a loan; that he did not know at the time whether the gun was loaded or not; that after some angry words by the deceased he started to leave the office, when she struck him with the gun and thereby caused him to catch hold of it to protect himself; that each of them pulled at the gun and it was accidentally discharged; that this scared him and caused him to run away; that he had made no confession whatsoever to the police, and had never made any threats against the deceased. The defendant also testified that after he left the office where the shooting occurred and before his arrest, he drank a pint and three gills of whisky, and it was testified by the police officers that when he made the confession to them he was "partially under the influence of intoxicating liquor," that is, "you could detect the odor of liquor on his breath" and "his speech was sort of thick," but that while "he showed indications of having been drinking * * * he had his mental faculties and knew what he was about"; and that he "was not drunk, but showed plainly he had been drinking." One of the police officers was asked, "In your opinion, if he had been operating an automobile would he have been under the influence of liquor to such an extent that you would have arrested him?" to which he answered, "If my attention was brought directly to the man it may be possible he would be arrested for operating an automobile while drunk."

At the close of the prosecution's testimony the defendant's counsel moved the court to "direct a verdict with respect to first degree murder"; also to strike out the testimony of the two witnesses who testified to the accused's confession "on the ground that the statement was not voluntary." Both motions were overruled with exceptions. At the close of the testimony of defendant, his counsel renewed the motion for a directed verdict as previously made, and the motion again was overruled. At the close of the rebuttal testimony for the prosecution, counsel for defendant "renewed the motion for a directed verdict, previously made, which motion was overruled," and exceptions noted. The record discloses that: "Thereupon, at the Bench and out of the hearing of the jury, counsel for defendant requested the Court to charge the jury that they might return a verdict either as to first degree murder, or as to second degree murder, or as to manslaughter. Whereupon the Court stated that he did not think the evidence justified the submission to the jury of the question of the guilt or innocence of the defendant on the question of manslaughter. To this ruling of the Court counsel for defendant noted an exception."

No request was presented to the court for special instructions to the jury, nor was any exception taken to the charge as delivered by the court. As to confessions the court charged as follows: "The confession, as I have said before, must be free or voluntary, that is, not produced by inducement engendering either hope or fear. It is the duty of the jury to reject the confession altogether if it should have a reasonable doubt as to its voluntary nature."

In this court the appellant presents two assignments of error, to wit:

(a) The receiving in evidence over the objection and exception of the appellant the alleged confession of the appellant.

(b) The failure of the court to instruct the jury that, under the evidence, they might return a verdict of manslaughter.

In support of the first assignment it is contended that the defendant at the time of making the alleged confession was intoxicated to such an extent that his statement cannot be considered a voluntary one, and that under such circumstances it should not have been admitted in evidence.

We cannot sustain this contention. The evidence fails to disclose such an extreme case of intoxication as to render the confession inadmissible. "The rule of law seems to be well settled that the drunken condition of an accused when making a confession, unless such drunkenness goes to the extent of mania, does not affect the admissibility in evidence of such confession, but may affect its weight and credibility with the jury. State v. Berry, 50 La. Ann. 1309, 24 So. 329." Lindsey v. State, 66 Fla. 341, 63 So. 832, 833, 50 L. R. A. (N. S.) 1077, Ann. Cas. 1916C, 1167. This rule has been applied in many cases. "The fact that defendant was more or less intoxicated when he confessed does not exclude the confession if he had sufficient mental capacity to know what he was saying." 16 C. J. 729. "It does not follow necessarily, that because the party was much intoxicated his reason was so far dethroned as to disable him from comprehending the effect of his admissions, or from giving a true account of the occurrence to which they had reference." Eskridge v. State, 25 Ala. 33. "A confes-

sion of crime or inculpatory facts, by one intoxicated at the time of making such confession, may be received in evidence against him, the intoxication affecting the weight of the confession as evidence against the accused, rather than its competency." State v. Grear, 28 Minn. 426, 10 N. W. 472, 41 Am. Rep. 296. "Intoxication, less than mania, does not exclude a confession made during its continuance, but it is a fact for the jury tending to discredit such confession." Lindsey v. State, 66 Fla. 341, 63 So. 832, 50 L. R. A. (N. S.) 1077, Ann. Cas. 1916C, 1167.

In the present case the lower court admitted the confession in evidence, and thus impliedly found from the testimony that the defendant at the time of making his statement was able to comprehend its meaning and effect, and that it was voluntarily made. This conclusion is plainly justified by the evidence. It is true the trial court did not specially instruct the jury respecting this subject, but no request was made for such a charge, nor was any exception taken to the court's charge as given to the jury. This fact would not preclude this court from considering the question upon appeal, and we have considered it, but we find no ground in the evidence for disagreeing with the action of the lower court.

As to the second assignment of error we are likewise unable to agree with appellant's contention, for in our opinion there was no basis whatever for a verdict of manslaughter in this case. There are only two possible interpretations of the evidence. One leads to the conclusion that the defendant unlawfully and maliciously killed the deceased and is guilty of murder, while the other leads to the conclusion that the deceased was killed by the accidental discharge of the gun while the accused was lawfully defending himself against her assault, in which case he would not be guilty of any crime whatever. Sparf v. United States, 156 U. S. 51, 15 S. Ct. 273, 39 L. Ed. 343; Davis v. United States, 165 U. S. 373, 17 S. Ct. 360, 41 L. Ed. 750; Wallace v. United States, 162 U. S. 476, 16 S. Ct. 859, 40 L. Ed. 1039; Andersen v. United States, 170 U. S. 481, 18 S. Ct. 689, 42 L. Ed. 1116.

We are therefore constrained to affirm the judgment of the lower court.

Affirmed.