Paul **BELTON**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 19247.

United States Court of Appeals
District of Columbia Circuit.

Argued July 19, 1966.

Decided June 16, 1967.

Petition for Rehearing En Banc
Denied Sept. 28, 1967.

Messrs. Julius M. Greisman and Daniel A. Rezneck, Washington, D. C. (both appointed by this court), for appellant.

Miss Carol Garfiel, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before BAZELON, Chief Judge, and TAMM and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

Appellant was indicted and tried for first-degree murder. The District Court charged the jury on first and second degree murder but refused a defense request for manslaughter instructions on the ground that there was no evidence to support a finding of guilt of this offense. The jury found appellant guilty of first-degree murder, thereby rejecting his claims of innocence and insanity. The jury recommended life imprisonment, see D.C.CODE § 22–2404 (Supp. V, 1966). This appeal followed.

### I  SUFFICIENCY OF THE EVIDENCE

Appellant first contends that the trial court erred by denying his motion for acquittal of first-degree murder. We disagree. The prosecutor's evidence,

viewed in the light most favorable to the Government, revealed these basic events: Appellant had been living with the deceased, as man and wife, for several years. They fought "most of the time." Sometime before November 30, 1963, appellant ceased to live with deceased, returning only occasionally. On that night deceased lay on the bed in her bedroom, in the presence of her 17-year-old daughter and three young men, friends of her son, who were watching television. At about 8:30 p.m., appellant came in the back door, "went straight toward the bed" and said to deceased "I thought you didn't drink any more." Deceased looked at appellant "and told him—and asked him, was he crazy." [1] Appellant then pulled a white-handled revolver from his pocket, and fired six shots at deceased. When he began reloading the gun the four children fled. By the time the police arrived deceased had died. The gun was found the next day in the apartment of an upstairs neighbor whom appellant had visited, and to whom he had confessed the fact of the slaying prior to the arrival of the police.

Appellant, in effect, admits that this evidence was sufficient to go to the jury on the elements of malice aforethought and specific intent to kill. However, he urges that it was insufficient to warrant submission to the jury of the issues of premeditation and deliberation —to permit a reasonable juror to find beyond a reasonable doubt premeditation and deliberation on the part of appellant. If the prosecution's evidence was insufficient as claimed, the error in failing to grant the motion for acquittal made by appellant at the conclusion of the prosecution's case would require reversal of the first degree murder conviction. See Austin v. United States, 127 U.S. App.D.C. ——, 382 F.2d 129 (No. 19903, decided this day). In this case appellant stresses the lack of evidence of motive or prior threats from which the existence of the necessary state of mind could be inferred. He says the period between his

---

1. This was the daughter's testimony. Another witness testified that deceased uttered these words only after appellant had begun firing the gun.

entrance into the apartment and the shooting was too abbreviated to be appreciable.

■■ Appellant's analysis rings true to a point, but it ignores crucial facts. First there was evidence in the Government's case [2] that appellant and deceased had not only quarreled in the past but also had had a disagreement that very day. Admittedly some of this evidence was ambiguous and some was based on hearsay testimony, but its admissibility was not challenged below and its proper weight and credibility were for the jury to decide. More significant is the testimony that appellant entered the apartment with a loaded gun. This, in our opinion, permitted an inference that appellant arrived on the scene already possessed of a calmly planned and calculated intent to kill, and supported submission to the jury of the elements of premeditation and deliberation. True, several of the Government's witnesses stated that they had seen appellant with that gun on several prior occasions and that it had been "around the house long before" the night of the murder. This testimony added a factor for the jury to consider in determining whether to make the inference that appellant had premeditated and deliberated the killing, but it did not make that inference impermissible. This is not a case where the murder weapon had innocent uses, or where it appeared that defendant habitually carried the weapon.[3] We do not believe that a reasonable juror must have had a reasonable doubt as to premeditation and deliberation, and conclude that it was not error for the trial court to deny the motion for acquittal of first degree murder. Curley v. United States, 81 U.S.App.D.C. 389, 160 F.2d 229, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947).

II  ADEQUACY OF INSTRUCTIONS

A.  Premeditation and Deliberation. Appellant challenges the trial court's instructions. We begin by considering the brief charge on premeditation and deliberation. The court charged the jury that premeditation was "the formation of the intent or plan to kill", and "deliberation means further thought upon this plan or design to kill." He further charged that if "reflection and consideration amounting to deliberation occurred" this would be sufficient, even if of exceedingly brief duration, although some appreciable period of time must have elapsed in order for this element to be established, "but no particular length of time is necessary for deliberation, and it does not require the lapse of days or hours or even minutes." (Tr. 361–62).

When the jury asked to be reinstructed on the elements of premeditation and deliberation, these instructions were reread.[4] It readily appears that these instructions did not contain the defects in the instructions considered in Austin v. United States, supra. The court specified the need for "appreciable time" for deliberation, and did not say this could be accomplished in a matter of seconds.[5]

2. Appellant himself corroborated the fact of frequent domestic arguments. However, we do not rely on this evidence to sustain submission of the case to the jury. Where the prosecution's evidence is insufficient to go to the jury on the issues of premeditation and deliberation it may not infuse vitality into the charge on the theory that defendant, by going forward, has "waived" this critical defect. See Austin v. United States, supra, 127 U.S.App.D.C. at ——, 382 F.2d at 138.

3. In Austin v. United States, supra, the accused habitually carried the murder weapon (a pocket knife he used to trim his fingernails, etc.). Compare United States v. Wilson, 178 F.Supp. 881, 885 (D.D.C.1959).

4. At the same time it requested a reading of the testimony of the deceased's daughter and another eye witness "regarding what transpired from the time of the entrance of the defendant and including the actual shooting." (Tr. 376.)

5. Appellant's counsel say that the same flavor was communicated by the charge that reflection "does not even require minutes." That phrase appears in Bostic v. United States, 68 App.D.C. 167, 170, 94 F.2d 636, 639 (1937), cert. denied, 303 U.S. 635, 58 S.Ct. 523, 82 L.Ed. 1095

Counsel argue to us that the charge was too brief to be illuminating, because the trial court failed to spell out the meaning of the terms and indicate how they applied to the evidence, because the "appreciable time" requirement instead of being highlighted was downgraded to a subordinate clause, and because the trial court failed to make clear to the jury that the first degree verdict would require that they believe beyond a reasonable doubt that the killing was not an impulsive act triggered by the exchange between appellant and his wife after he entered the apartment.

■■ On request, an accused is entitled to instructions that make clear the distinction between the first and second degrees of murder by reference to the distinction between killings in cold blood and killings on impulse. Austin v. United States, supra. Instructions calculated to lead the jury to conclude that impulsive killings are murder in the first degree are erroneous. The instructions given here were skimpy, but they did set forth the difference between the degrees of murder sufficiently so that we cannot say reversal is required on the ground of plain error, notwithstanding the absence of objection.

The problem areas noted in this opinion are not to be taken as ruling that the charges discussed would be sustained over appropriate objection. We further assume that trial judges will implement the principles set forth today, in *Austin*, not in a spirit of grudging acquiescence under the spur of objections, but in a whole-hearted effort to improve the administration of criminal justice by illuminating for juries these matters hitherto often relegated to over-generalized and abstruse recitals.

■ **B.** *Malice Aforethought.* We turn to the court's explanation of the concept of malice aforethought, which of course is an element of both first and second degrees of murder. After a general definition of malice not assailed on this appeal,[6] the court stated:

Implied malice is such as may be inferred from the circumstances of the killing, as for example, where the killing is caused by the intentional use of fatal force without circumstances serving to mitigate or justify the act or when an act which imports danger to another is done so recklessly or wantonly as to manifest depravity of mind and disregard of human life.

The instrument or means by which a homicide has been accomplished is always to be taken into consideration in determining whether the act is criminal and in what degree it may be so.

If in a prosecution for a homicide, it is shown that the accused, the defendant, used a deadly weapon in the commission of the homicide, the law infers from the use of such weapon, in the absence of explanatory or mitigating circumstances, the existence of the malice essential to culpable homicide, and you are instructed as a matter of law that a gun or a pistol is a deadly weapon. (Tr. 360–61.)

■ Malice is an ultimate fact that can rarely be proved by direct evidence. It is both desirable and necessary to

---

(1938). It presents problems that do not characterize, *e.g.*, the charge approved in Fisher v. United States, 328 U. S. 463, 66 S.Ct. 1318, 90 L.Ed. 1382 (1946), that deliberation "may cover but a brief span of minutes." (328 U.S. at 469 n. 3, 66 S.Ct. at 1321). The *Fisher* phrase is the one used in § 83 of the Manual of Criminal Jury Instructions (1966) prepared by the Junior Bar Section of the District of Columbia Bar Association. We do not say that the phrase used by the trial court could survive objection. It underscores the need for the kind of perspective outlined in Austin v. United States, *supra*. But it is certainly different in impact from the "seconds" charge considered in *Austin*, and does not of itself constitute reversible error in the absence of objection.

6. Except for the point discussed in this opinion, the instruction on malice, which was not challenged by appellant, was in accord with that recommended by the Junior Bar Section in its Manual of Criminal Jury Instructions § 83, at 62–63 (1966).

instruct the jury that they may infer the existence of malice from other evidentiary facts, including the deadly nature of the weapon utilized. But that does not mean that "the law infers" malice from use of a deadly weapon. Malice may be established by reference to either of two standards: One, a subjective standard—whether the defendant actually intended or foresaw that death or serious bodily harm would result from his act; and the other, an objective, "reasonable man" standard—whether the defendant should have foreseen that such result was likely.[7] It is for the jury to determine whether the requisite state of mind or negligent pattern of behavior existed.[8]

▆▆ The judge erred in stating that "the law infers * * * malice" from the use of a deadly weapon, and would have been obligated upon request to substitute instead an instruction charging that the law permits the jury to draw this inference of malice.[9]

What we must decide, however, is whether this was "plain error" that wrought such substantial prejudice as to require reversal of the conviction even though no objection was made. We have

little doubt that if objection had been made this slip of the tongue by a capable trial judge—assuming the reporter heard him right—would have been corrected. To a lawyer, there is an undeniable gulf between "the law infers" and "the law permits you to infer." We think it unlikely that the jury felt obligated by virtue of this simple phrase to find malice if it found defendant had a deadly weapon, particularly since the possibility of such an understanding was undercut by the context of the phrase. We must consider the impact in the court room, how the words sounded to the ear.[10] The charge as heard in the court room did not ring an alarm of error or prejudice to counsel, whose defense rested on appellant's testimony that it was the deceased who brought forth the pistol. This was not only a single phrase, but a phrase uttered in a context provided by the preceding paragraph, which may fairly be described as advising that the instrument or means of the homicide was for the consideration of the jury in determining whether there was a criminal act and in what degree.[11] Last but not least is the consideration that the charge clearly alerted the jury to the need for finding premeditation and de-

7. *See, e.g.*, Austin v. United States, *supra*, 127 U.S.App.D.C. at ——, 382 F.2d at 133; Bishop v. United States, 71 App.D.C. 132, 107 F.2d 297 (1939); Lee v. United States, 72 App.D.C. 147, 112 F.2d 46 (1940); Perkins, *A Re-examination of Malice Aforethought*, 43 YALE L.J. 537 (1934); Wechsler & Michael, *A Rationale of the Law of Homicide: I*, 37 COLUM.L.REV. 701, 707–09 (1937); Note, 46 COLUM.L.REV. 1005, 1007–08 (1946); HOLMES, THE COMMON LAW 51–63 (1938 ed.).

8. *See, e.g.*, Stevenson v. United States, 162 U.S. 313, 319–320, 16 S.Ct. 839, 40 L.Ed. 980 (1896); Allen v. United States, 164 U.S. 492, 494–495, 17 S.Ct. 154, 41 L.Ed. 528 (1896); Liggins v. United States, 54 App.D.C. 302, 297 F. 881 (1924).

9. The court may not withdraw from the jury's consideration any of the essential elements of the crime. *See, e.g.*, Sparf v. United States, 156 U.S. 51, 64–99, 15 S.Ct. 273, 39 L.Ed. 343 (1895); Horning v. District of Columbia, 254 U.S. 135, 41 S.Ct. 53, 65 L.Ed. 185 (1920); Byrd v.

United States, 119 U.S.App.D.C. 360, 342 F.2d 939 (1965); Jackson v. United States, 121 U.S.App.D.C. 160, 348 F.2d 772 (1965).

10. McGill v. United States, 121 U.S.App. D.C. 179, 185, 348 F.2d 791, 797 (1965).

11. We also note that upon completion of instructions, the court charged "while the government is not required to prove motive, yet that is an element for you to consider in your determination of the guilt or innocence of the defendant in this case." (Tr. 369). Defendant would have been entitled on request to a charge that "absence of proof of motive [may] be considered as a circumstance *in defendant's favor*." Lanckton v. United States, 18 App.D.C. 348, 368 (1901). (Emphasis added.) But this passage as given reenforces our conclusion that the charge taken overall is not fairly to be taken as so directing the jury to find malice from the possession of a deadly weapon, as to constitute reversible error in the absence of objection.

liberation, over and above malice, before bringing in a first-degree verdict.[12] A jury inferring premeditation and deliberation could hardly have failed to infer malice. The conjunction of these factors leads us to conclude that this is not an appropriate case to invoke the plain error rule.

■ C. *Denial of Manslaughter Instruction.* Appellant's final contention is that the trial court erred by denying his request for a manslaughter instruction. A defendant is entitled to instructions on a lesser included crime where there is evidence in the record to support a finding of guilt on that offense. Since manslaughter is a lesser included offense in murder, the issue is whether there was enough evidence here to warrant the charge.[13]

There was no such evidence in the prosecution's case, and we turn to appellant's version of events: He testified that he had quarreled with deceased the night before her death, and had eventually left home to spend the night at his sister's house. He returned home the following evening after work and upon entering asked his wife where his tire chains were. At this point his wife became abusive and assaulted him with her hands. In one of her hands she was holding a gun. He began to struggle with his wife when she assaulted him and the gun went off several times during their scuffle, but no one was hit. The fight ended when they fell over a chair, and appellant broke loose and ran out of the house, leaving behind his uninjured wife. When he returned

some time later he found her on the bed, dying.

On its face this story, if believed by the jury, could lead only to acquittal since appellant claimed he was not even present when deceased was shot. Appellant's counsel argue to us, however, that the jury was not bound to treat his testimony as a unit, either believing or disbelieving it in its entirety, and that the jury was entitled to accept part of appellant's version—that his wife assaulted him without provocation and that they struggled for possession of the gun—while disbelieving his assertion that his wife was not shot while he was in the room.

■ We agree with counsel that an accused is entitled to an instruction on manslaughter if there is "any evidence fairly tending to bear upon the issue of manslaughter," however weak, and that the court may not intrude on the province of the jury which may find credibility in testimony that the judge may consider completely overborne by the "simply overwhelming" evidence of the prosecutor. Stevenson v. United States, 162 U.S. 313, 315, 323, 16 S.Ct. 839, 40 L.Ed. 980 (1896); see Kinard v. United States, 68 App.D.C. 250, 253–254, 96 F.2d 522, 525–526 (1938). And there may be "some evidence" of a lesser offense even though this depends on an inference of a state of facts that is ascertained by believing defendant as to part of his testimony and prosecution witnesses on the other points in dispute. Broughman v. United States, 124 U.S.App.D.C. 54, 361 F.2d 71 (1966); Young v. United States, 114 U.S.App.D.C. 42, 309 F.2d 662 (1962).[14]

12. This fact alone would not be determinative if the malice charge was clearly prejudicial since a damaging malice charge may provide a momentum, so to speak, that carries over into the issue of deliberation.

13. *See, e.g.,* Sparf v. United States, 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (1895); Stevenson v. United States, 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896); Davis v. United States, 165 U.S.

373, 17 S.Ct. 360, 41 L.Ed. 750 (1897); Andersen v. United States, 170 U.S. 481, 18 S.Ct. 689, 42 L.Ed. 1116 (1898).

14. In addition *see* Womack v. United States, 119 U.S.App.D.C. 40, 336 F.2d 959 (1964) ("a defendant is entitled to an instruction on any issue fairly raised by the evidence, whether or not consistent with the defendant's testimony or the defense trial theory."); United States v. Wilson, 178 F.Supp. 881, 886 (D.D.C.

Here there was no testimony "fairly tending" to bear on manslaughter —i.e. fairly tending to show that deceased unjustifiably assaulted appellant with a gun, he wrested the gun from her control, and then shot her in the heart.[15] This could only be made out if the jury reached a conclusion as to occurrences not related in the testimony of any witness and obtained by a reconstruction of events. There may be cases where that kind of reconstruction is fairly inferable from testimony though not directly stated therein, but we do not think the present case warrants that description. It is rather a case where the charge requested was objectionable as based on speculation without foundation in the evidence. *Cf.* Brooke v. United States, U.S.App.D.C. (No. 20241 April 19, 1967). If the prosecutor had sought the manslaughter instruction, we would find it difficult to override a defense objection that whatever the jury may have surmised, the evidence was not sufficient to permit a reasonable juror to find beyond a reasonable doubt that there had been a killing by defendant in sudden quarrel, or in the heat of passion, following provocation by the deceased.

If the trial court had been specifically apprised of the reconstruction of events now put forward to us by appellate counsel, it would have been well advised to give the manslaughter instruction. We say this out of a conviction that in the balancing of the elements of justice the principle that the jury should be permitted to find the facts is a cornerstone of our jurisprudence that is dominant, where choice must be made, and outweighs the proper concern that the jury should not be allowed to speculate or determine punishment instead of guilt. Perhaps the guidance offered in this paragraph cannot be entirely reconciled as a matter of logic with our discussion in the prior paragraph. However, the administration of justice may be served better by attention to realities than to rigorous logic. In short, we suggest that where the issue is close, the request of defense counsel may properly be given the benefit of the doubt. The danger of giving the jury a power to make punishment lenient (by downgrading the offense) is offset in part by the discretion available to the trial court on sentencing. And it is appropriate to take into account the strain on judicial administration resulting from the need for retrial if the position of the trial court is not sustained on appeal. But even such an approach presumes that the trial court will be reasonably alerted to the factual predicate underlying the instruction requested. Here the testimony did not "fairly tend" to bear on manslaughter, and we cannot assign reversible error to the failure of the trial court to glean and array on its own motion the strained possibilities of events put forward by counsel who have mulled over the appeal, but not advanced at trial either by defense counsel or the witnesses.[16]

1959) ("It is an elementary principle that the jury is not bound to accept the entire * * * [testimony]. It may accept a part and reject the balance.")

15. Subsequent cases have undercut the vitality of Bell v. United States, 60 App. D.C. 76, 47 F.2d 438, 74 A.L.R. 1098 (1931). In *Bell* defendant's version of the killing was parallel to appellant's in this case. We upheld the trial court's refusal to instruct on manslaughter on the ground that defendant's story, if fully believed, could only lead to a verdict of acquittal. However, as Kinard v. United States, 68 App.D.C. 250, 96 F.2d 522 (1938) explains, *Bell* rested on the theory that a defendant was not entitled to present inconsistent defenses to the jury. To the extent that theory was ever a correct statement of the law, we think it has been overruled in this jurisdiction by such cases as *Broughman* and *Young*, discussed in the opinion, *supra*, and Womack v. United States, *supra* note 14.

16. The relative obscurity of the defense theory distinguishes the present case from those like Young v. United States, *supra*, where we reversed notwithstanding our comment that defense counsel might well have given the judge more assistance by pointing specifically to the testimony on which he relied and the controlling authorities. In addition, as noted in the text of the opinion, in this

In reaching our conclusion that there was no reversible error, we again emphasize that the jury's verdict went beyond second degree murder; this weakens any sense of prejudice from failure to charge manslaughter.

\* \* \*

We are left overall with the conviction that essentially this was a case of clear and open conflict between the testimony of defendant and of the several prosecution witnesses, that the jury called for a re-reading of the testimony of the latter and believed their account of the events.

Defense counsel also offered a claim of insanity, but this was rejected by the jury and presents no issue on appeal.

Affirmed.

BAZELON, Chief Judge (dissenting):

This is a first degree murder case in which the defendant received a life sentence and in which, according to the majority opinion, (1) the evidence on premeditation and deliberation was weak. (2) the charge on deliberation and premeditation was "brief" and "skimpy," (3) the charge on malice, relevant to first and second degree murder, was error, and (4) the trial judge would have been "well-advised" to give the manslaughter instruction if trial counsel had reconstructed the facts as well as counsel on appeal.

I agree that the evidence could have supported an inference of premeditation. The weakness in the evidence, though, must inform any decision about the prejudicial effect of errors during the trial. For example, the trial judge's charge on premeditation and deliberation was very "skimpy"—indeed so skimpy that the jury asked to be reinstructed on these elements. (The trial judge simply repeated his original charge.) The jury's request casts doubt upon the majority's assumption that the charge adequately explained the difference between the degrees of murder. Further, at least one phrase in the charge was misleading.[1] As the majority politely puts it, "We do not say that the phrase used by the trial court could survive objection."[2] In my view, the weakness in the evidence on premeditation makes these defects in the charge highly prejudicial.

I agree also with the majority that "The judge erred in stating that 'the law infers \* \* \* malice' from the use of a deadly weapon."[3] However, the "context" of the erroneous phrase leads the majority to think that "it [is] unlikely that the jury felt obligated by virtue of this simple phrase to find malice if it found defendant had a deadly weapon \* \* \*."[4] The charge is quoted in the majority opinion. First, the trial judge informed the jury that malice could be inferred from the circumstances of a killing. He went on to say that the instrument used is always considered. Then he said that "the law infers from the use of [a deadly weapon] the existence of malice essential to culpable homicide," and (in order to dispel any possible doubt) "as a matter of law that a gun or pistol is a deadly weapon." I do not see how any juryman listening to the charge could fail to understand what he was being directed to find on the issue of malice if he found that defendant used a pistol. The majority's theory seems to be that, although a

---

case—unlike *Young*—the prejudice from failure to charge manslaughter is more remote in view of the failure of the jury even to bring the verdict down to second degree murder.

1. I do not see a great difference between saying that "it [deliberation] does not require the lapse of days or hours or even minutes" as the trial judge said here, and saying that the time required for deliberation "may be in the nature of hours, minutes or seconds" which the court found objectionable in Austin v. United States, decided today, 158 U.S. App.D.C. ——, 382 F.2d 133 (1967).

2. 127 U.S.App.D.C. ——, —— n. 5, 382 F. 2d 153 n. 5.

3. 127 U.S.App.D.C. at ——, 382 F.2d at 154.

4. 127 U.S.App.D.C. at ——, 382 F.2d at 154.

lawyer would have understood the difference between "the law infers" and "the law permits you to infer," the jury did not. I cannot assume so confidently that laymen misunderstand the English language.

The majority points out that the jury found premeditation and deliberation. If that finding were more soundly based, I might be persuaded that the erroneous charge on malice was nonprejudicial. Here the jury made its findings about premeditation on weak evidence, and after a "skimpy," "brief," and misleading charge.

Finally, I do not think that a request for an instruction should depend on how well the trial lawyer reconstructs the facts for the trial judge.

I think it is fair to assume that the majority would have reversed on the basis of the errors which it finds if the defendant's lawyer had made the proper objections and arguments below. I do not think that the prejudicial nature of these errors is affected in the least by the trial lawyer's apparent oversights. There is no reason to believe that the failure to make these objections and arguments was motivated by considerations of "strategy" or that it was deliberate in any way.

Accordingly, I respectfully dissent.