REINHARDT, Circuit Judge,
with whom Judges THOMAS and BERZON join,
dissenting:
This is a case in which there is no conflict among circuits, no intra-circuit conflict, and no issue of national importance. The court went en banc not over any legal issue, but only to decide whether a few specific facts identified in the majority opinion were sufficient to warrant a finding of premeditation. A similar combination of facts is not likely to occur again in a future case, especially as there are few federal murder cases — this one happened on an Indian reservation — and even fewer in which the question whether the murder was first- or second-degree hinges exclusively on whether there is sufficient circumstantial evidence to prove premeditation. Nevertheless, a majority of this court decided that it was worthy of en banc review when the three-judge panel found that the prosecution had failed to prove murder in the first as opposed to second degree. Because I disagree with the majority that the minimal facts that it sets forth in its opinion are sufficient to establish premeditation beyond a reasonable doubt, whatever reasonable inferences may be drawn, I dissent.
It is an elementary principle of our criminal justice system that in a criminal prosecution the government bears the burden of providing proof that establishes the defendant’s guilt beyond a reasonable doubt, including the degree of the offense charged. The rule applies to each element of a criminal offense. It “gives concrete substance to the presumption of innocence, [ensures] against unjust convictions, and [reduces] the risk of factual error in a criminal proceeding.” Jackson v. Virginia, 443 U.S. 307, 314, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (quoting In re Winship, 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)). The prosecution’s affirmative obligation to produce sufficient evidence of guilt enforces this rale, by guaranteeing the accused that the government will not convict him by appealing to a jury’s prejudices, or on the basis of its speculations or arbitrary whims. It is in this light that we examine a conviction to determine whether any “rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt” Id. at 319, 99 S.Ct. 2781. In this case, the majority’s opinion renders without substance this fundamental protection against arbitrary convictions or convictions based upon mere speculation.
The government charged Kenderick Be-gay with first-degree murder for two simultaneous killings that he carried out in the early morning of March 28, 2002. In order to convict Begay of first-degree murder the government was required to *1048 prove beyond a reasonable doubt not only that he intended to kill one of the victims, J.T., and killed him deliberately, or with malice aforethought,[1] but that Begay had premeditated or planned that murder by reflecting on it for some period of time with a cool mind.[2] 2 Wayne R. LaFave, Substantive Criminal Law § 14.7(a) (2d ed. 2009). It is undisputed that the prosecution presented none of the evidence traditionally offered to prove premeditation. It presented no evidence that Be-gay had planned J.T.’s killing,[3] no evidence that Begay had a motive to kill J.T., no evidence that Begay had any pri- or relationship with the victim, no evidence regarding Begay’s demeanor during the time of the killing, and no evidence that the manner in which the killing was committed was particularly calculated or methodical.[4] See, e.g., LaFave, supra, § 14.7(a) (listing “planning activity,” “motive,” and “nature of the killing” as important types of circumstantial evidence for proving premeditation). Instead of pointing to such traditional sources of proof of premeditation, the majority relies on four items of evidence that it asserts supported an inference of premeditation that could have established that element beyond a reasonable doubt in the mind of a rational finder of fact: (1) after whatever occurred between Begay and J.T. during their first encounter at the window of the car in which J.T. was sitting, Begay returned to his adjoining truck and retrieved his rifle; (2) Begay walked between his truck and the victims’ car; (3) Begay returned to the passenger’s side of the victims’ car, presumably to get a clear shot at J.T.; and (4) Begay told his sister to shut up after the shooting and did not answer when another passenger asked him what he had done.
Even this brief recitation makes clear that none of these items of evidence on which the prosecution relies supports a reasonable inference that Begay planned or premeditated J.T.’s murder — that Be-gay not only had the opportunity to deliberate the killing with a cool mind, but that he actually did so. The evidence present *1049 ed by the prosecution allows only for speculation as to that crucial question. If, as the majority’s opinion suggests, first-degree murder can be established whenever a defendant simply has enough time to premeditate or when he seeks a “clearer shot” at a victim or reacts angrily or ignores a question after the shooting, then the difference between first- and second-degree murder has effectively ceased to exist. So, too, if premeditation can be shown by the defendant’s retrieving from a few feet away a weapon that is legitimately present at the site of the murder.[5] It is difficult to conceive of any intentional, deliberate murder with malice aforethought that, based upon the majority’s opinion, would not present one or more of the majority’s hallmarks of premeditation. If the distinction between first- and second-degree murder is to retain any substance, as it must given the sentencing consequences that flow from it, it is incumbent on the government not only to prove that the defendant may have premeditated, but to establish that the defendant actually did so, and to establish the element of premeditation beyond a reasonable doubt. See LaFave, supra, § 14.7(a) (“There is no presumption that the murder is first degree murder; for the higher degree there must be some affirmative evidence to support a finding that the defendant in fact did premeditate and deliberate.”); see also Austin, 382 F.2d at 133-36 (providing historical review of the distinction between first- and second-degree murder and emphasizing the need for “careful attention to the requirement of premeditation and deliberation”). While the prosecution may present circumstantial evidence that would allow a rational finder of fact to draw an inference that a defendant actually premeditated a murder, no such evidence has been presented by the prosecution in this case, as a close examination of the four items of evidence relied on by the majority clearly reveals.
The first item is that Begay retrieved his rifle from his truck, which was parked besides or behind the car in which J.T. was sitting, immediately after an interaction of some sort between the two young men at the site of the killing. That evidence does not warrant the inference that Begay planned or otherwise reflected with a cool mind upon the commission of the murder. The majority does not contend that premeditation is shown by the fact that Begay was driving with his rifle in the truck when he arrived at the location where the two vehicles parked near each other — only by the fact that he retrieved it from his truck after his initial encounter with J.T. The majority asserts that Begay’s retrieving of the rifle evidenced premeditation because premeditation can be proven by a defendant’s “carrying the murder weapon to the scene.” Maj. Op. at 1044. But the notion *1050 that Begay’s truck constituted a separate “scene” from which Begay obtained the weapon after the interaction at the window of the car is wholly contrary to the record. What little testimony there was on the location of the two vehicles suggests that they were parked immediately adjacent to one another: one prosecution witness testified that the vehicles were parked “side by side” and answered affirmatively when asked whether the “cars were parked relatively close together”; another testified that Begay had parked his truck “behind the [victims’] car.” Carrying a weapon to a murder scene may in some circumstances support an inference of premeditation because it suggests that the defendant “arrived on the scene already possessed of a calmly planned and calculated intent to kill.” See Belton v. United States, 382 F.2d 150, 152 (D.C.Cir.1967). But the logic supporting that inference does not hold where, as here, the murder occurs at a place directly adjacent to the location from which the defendant retrieved the weapon. Obtaining the gun from a vehicle already at the scene does not bear the hallmarks of calculation and planning.
It is, of course, possible that, as the majority asserts, Begay “formed a plan for committing the murders and then set about carrying it out,” Maj. Op. at 1044, and that he did so after deliberating with a cool mind, while walking from one vehicle to the other and back. Admittedly, he had the time to do so, but without knowing what occurred between Begay and J.T. in their encounter before Begay retrieved his rifle, and without any evidence as to his demeanor, or how he appeared to be acting when he obtained the weapon and returned to the victims’ car, there is simply no basis other than speculation for any rational trier of fact to so conclude beyond a. reasonable doubt. Begay may have had a “cool mind” and deliberated on his actions as he walked to his truck to retrieve his rifle and immediately returned to O.C.’s car, or he may have been unable to reflect upon his actions in a calm state due to anger or some other highly emotional reaction to some perceived provocation, or he may, as the government’s chief eyewitness testified, simply have been “pretty drunk” at the time he retrieved the rifle from his truck. In short, the record is silent on the matter of whether Begay deliberated with a cool mind before forming the intent to kill J.T. The mere fact that Begay retrieved a weapon from a vehicle parked “side by side” with the victims’ car allowed the jury only to speculate impermissibly as to premeditation, and was without question not evidence that would allow any reasonable juror to infer premeditation beyond a reasonable doubt.
The majority next argues that premeditation can be inferred from Loren Clark’s testimony that Begay walked between his truck and O.C.’s car. This walking is significant, the majority asserts, for two reasons. The first is that “there was no evidence that [Begay] was agitated or rushed.” Maj. Op. at 1044. The majority’s belief that a conviction for premeditated murder can be obtained whenever a defendant walks from one point to another during a killing unless he presents evidence that he was walking in an “agitated or rushed” manner could be dismissed as unworthy of consideration were it not so insidious: it is the prosecution, not the defense, that bears the burden of proof in a criminal trial. If the government wished to use Begay’s demeanor as a basis for convicting him of first-degree murder, it was its burden to present evidence that Begay was not agitated or disturbed when he walked from one vehicle to another. At trial, the government did not avail itself of its opportunity to ask its own witness, Clark, whether Begay appeared “agitated or rushed,” nor did it present any other evidence regarding Begay’s demeanor when he walked from one vehicle to the *1051 other. The majority absolves the government of its burden of presenting such evidence, instead inferring premeditation from the absence of evidence regarding Begay’s demeanor. That there is “no evidence that Begay was agitated or rushed,” Maj. Op. at 1044, is exactly what it sounds like — no evidence — no evidence that he was agitated or that he exhibited a cool manner. The majority’s contrary conclusion contradicts centuries-old principles of American criminal justice, imposing upon murder defendants the burden of proving they were not calm while committing a murder.[6]
The majority also asserts that Begay’s walking helps prove premeditation because it shows “he had enough time to become fully conscious of his intent to kill and to consider the killing.” Maj. Op. at 1044. But while “enough time” is a necessary condition for establishing premeditation, it is not a sufficient one. If “enough time” to premeditate were all that need be shown to sustain a first-degree murder conviction, the government could meet the burden of establishing first-degree murder in almost every murder case, and there would be little reason to establish two categories of offenses, first- and second-degree murder, other than to allow the prosecution to decide as a matter of its own whim or bias which defendants should be punished for “first-degree” murder and which for “second-degree,” and in some instances which should be executed and which should be imprisoned. In a country of laws, however, the prosecution must do more than show in a case such as this that some span of time transpired before a fatal act occurred. The government must also introduce evidence, circumstantial or otherwise, supporting the conclusion that the defendant “did, in fact, reflect” upon the decision to commit murder and then committed that act with a cool mind. United States v. Shaw, 701 F.2d 367, 393 (5th Cir.1983); see also LaFave, supra, § 14.7(a) (“It is not enough that the defendant is shown to have had time to premeditate and deliberate. One must actually premeditate and deliberate____”). That Begay walked the short distance from his truck to O.C.’s car, and back, and thus had time to premeditate, cannot establish that he did premeditate. It therefore cannot logically serve as “sufficient evidence” for a finding of premeditation. See, e.g., Hemphill v. United States, 402 F.2d 187, 189 (D.C.Cir.1968) (“But the jury may not find premeditation solely from the fact that defendant had time to premeditate.”); State v. Garcia, 114 N.M. 269, 837 P.2d 862, 868 (1992) (“We do not dispute the *1052 State’s contention that Garcia had sufficient time to form a deliberate intention to kill.... Garcia certainly could have formed a deliberate intent during the ten to fifteen minutes while going from the back yard to the front yard, but nothing in the evidence enabled the jury to infer that this is when he formed the requisite deliberate intent, or that he ever formed such an intent.”); see also United States v. Catalan-Roman, 585 F.3d 453, 467 (1st Cir.2009) (“With respect to premeditation, ‘it is the fact of deliberation, of second thought[,] that is important.’ ”) (citation omitted).
The third item of evidence that the majority contends supports a finding of premeditation is Clark’s testimony that Begay “went to the passenger’s side, where [his intended victim] J.T. was sitting” prior to shooting him. This, according to the majority, supports an inference “that [Begay] did so to get a clearer shot at J.T.” Indeed it may, but the fact that Begay wanted a clear shot at J.T. simply establishes that Begay intended to kill J.T. and that he did so deliberately; not that he had reflected or premeditated upon the killing with a cool mind. Intent and premeditation are, as the majority acknowledges, separate and distinct elements of first-degree murder. Both are required. Intent alone will not suffice.[7] See United States v. Quintero, 21 F.3d 885, 890 n. 3 (9th Cir.1994); United States v. Free, 841 F.2d 321, 325 (9th Cir.1988) (distinguishing between “malice aforethought” and premeditation as essential elements of first-degree murder); see also LaFave, supra, § 14.7(a) (“[T]he defendant must not only intend to kill but in addition he must premeditate the killing and deliberate about it.”). While premeditation may be inferred when “the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a preconceived design,” LaFave, supra, § 14.7(a), the majority does not contend (nor could it) that this crime was notably particular or exact. Nor is it otherwise evident how one could reasonably conclude that Begay had premeditated this murder from the mere fact that he sought a clear shot at his victim. That Begay sought a clear line of sight of J.T. demonstrates that he intended to kill J.T. But if there is any “chain of logic,” Maj. Op. at 1045, that connects this evidence of intent to an inference of premeditation, it is neither discernible from the facts of this case nor from the majority’s opinion. Nor, of course, is any such “chain of logic” discernible with respect to any of the other three items that the majority contends a reasonable fact-finder could conclude would support a finding of premeditation beyond a reasonable doubt. Here, the “chain of logic” is simply a legal phrase that the majority employs to justify a conclusion that it has reached, without any explanation of what it means or why it is applicable to the present case.[8]
Fourth, the majority argues that the jury could have permissibly inferred that Begay acted with a cool mind from two related facts: first, that “Begay did not *1053 answer when, after the shooting, Clark asked what he had done,” and second, that Begay told his sister to shut up after she asked him “What did you do?” Maj. Op. at 1041. This argument starkly illustrates the insidiousness of the majority’s cavalier willingness to find an “inference” of premeditation lurking behind every fact pertaining to this crime. Begay can be convicted of premeditated murder if, when asked what he has done, he responds forcefully; so, too, can he be convicted if he remains silent. Under this logic, any action Begay took subsequent to the murders could support a finding of premeditation: if he showed fear, an inference could be drawn; so too, if he demonstrated a lack of emotion. This approach not only beggars reason, but it once again shifts the burden of proof: there is no evidence regarding Begay’s demeanor when, moments apart, he told his sister to shut up and failed to respond to Clark; Begay may have been acting coolly, been in a state of shock, or lost his composure; the record provides absolutely no indication one way or the other. The majority interprets the record’s absence of information as to Be-gay’s reaction to the shooting as damning to Begay, rather than to the government, which, it once again appears to forget, bears the burden of presenting evidence that affirmatively proves premeditation. Given the absence of such evidence, only through pure speculation could the jury have found Begay to have been “cool” and deliberative after the murder, rather than impulsive, or in a state of shock, or an individual who had lost control over his emotions; and certainly no rational trier of fact could have looked at the flimsy facts relating to his responses and nonresponses and found that they, along with the other dubious items of evidence, established beyond a reasonable doubt that Begay premeditated J.T.’s killing.
This case ultimately comes down to the simple question of whether Begay’s retrieving a gun from his truck is sufficient evidence to establish beyond a reasonable doubt that he premeditated J.T.’s killing. That he walked a brief distance from vehicle to vehicle for this purpose might show that he had sufficient time to deliberate coolly on the subject, but without any evidence regarding demeanor or manner, it cannot show that he in fact did so. The evidence that he tried to get a clean shot at J.T. rather than a poor one and his answer or lack of answer to a question about what he had just done have no arguable evidentiary value, circumstantial or otherwise, whatsoever. Nor, in the end, does the fact that Begay retrieved the gun from his truck. What the evidence about retrieving the gun could demonstrate to any rational trier of fact is at most that Begay might or might not have premeditated J.T.’s murder. It could not show that he deliberated with a cool mind or that he used the opportunity to develop a plan. Certainly there is nothing that would allow a juror to infer that he premeditated beyond a reasonable doubt.
The four items of evidence, whether viewed individually or collectively, are manifestly insufficient to support a conviction of murder in the first degree and would be insufficient even were there no countervailing evidence in the record. But there is indeed countervailing evidence that is far more relevant to the question of premeditation than whether, for example, Begay walked the short distance between the car and the truck or told his sister to shut up after the shooting or failed to answer Clark’s question. The majority does not even consider the fact that the government’s principal witness, who provided the bulk of the eyewitness testimony upon which the prosecution relied, and whom the jury obviously deemed credible, also testified that Begay was “pretty drunk” at the time of the shooting, a fact that strongly suggests the absence of pre *1054 meditation. See In re Ellis, 356 F.3d 1198, 1219 (9th Cir.2004) (en banc) (noting distinction between “whether defendant committed the murder with deliberation and premeditation, [or] as a result of an impulse[,] or because of alcohol- or drug-induced diminished capacity”); Kane v. United States, 399 F.2d 730, 736 (9th Cir.1968) (observing that intoxication can be “exculpatory” in a first-degree murder prosecution). By the same token, the government’s witnesses, who spent the night in question with Begay, reported that they reacted with shock after he fired into the victims’ vehicle, suggesting that neither Begay’s demeanor nor his words or conduct on that night were those of an individual who had been planning or otherwise premeditating a murder.
The fundamental question here is whether based on the four items of evidence on which the majority relies, “any rational trier of facts [could] find guilt beyond a reasonable doubt.” Jackson, 443 U.S. at 313, 99 S.Ct. 2781. Whether any inference drawn from the evidence is a legitimate inference, or rather simple speculation, must be examined with attention to this fundamental principle of our criminal justice system. The items relied on by the majority are all, of course, consistent with the possibility that Begay premeditated J.T.’s murder, or, at the least, they are not inconsistent with that possibility. However, neither individually nor collectively do these items justify the inference that the element of premeditation has been established — that Begay actually planned or premeditated J.T.’s killing — let alone established that inference beyond a reasonable doubt.
The absence of evidence of premeditation is especially troubling in this case because, as the majority acknowledges, the government provided the jury with an erroneous statement of the law of premeditation during its closing argument, telling it that “[Begay] intended to kill the occupants of the vehicle. That’s premeditation.” Maj. Op. at 1046. In light of this wholly erroneous statement of the law on the critical issue before the jury, and other similar erroneous statements the prosecution made during its closing argument, the jury may perhaps be excused for convicting Begay of first-degree murder despite wholly insufficient evidence as to premeditation. The majority, however, cannot be similarly excused for unreasonably identifying as warranting an “inference” of premeditation the four items of the government’s sparse factual showing, on which it relies. In sum, there is simply no evidence that Begay reflected upon, planned, or otherwise premeditated J.T.’s killing, and certainly no evidence from which a rational fact-finder could infer the necessary element of first-degree murder beyond a reasonable doubt. Surely a conviction for second-degree murder — murder with malice aforethought — should have been enough.
For all the above reasons, and more, I dissent.

. Malice aforethought, a concept distinct from premeditation, is an element of both first- and second-degree murder under the federal murder statute. See 18 U.S.C. § 1111(a).

. The record strongly suggests that Begay intended to kill only J.T., who was struck by six bullets, and not his second victim, O.C., who was killed by a bullet that struck her only after passing through J.T. Under the federal murder statute, any murder that results from a premeditated plan to kill is first-degree murder, regardless of whether the victim was the intended target of the killer’s premeditated plan. 18 U.S.C. § 1111(a). Thus, though Be-gay was convicted of two counts of first-degree murder, the relevant question is whether he intended and premeditated J.T.’s death. See Maj. Op. at 1044 n. 5.
There is no dispute in this case that the government’s evidence was sufficient to convict the defendant of second-degree murder, the essential elements of which are an unlawful killing, malice aforethought, and intent. See United States v. Quintero, 21 F.3d 885, 890 n. 3 (9th Cir.1994); 18 U.S.C. § 1111(a). The only question is whether the government presented sufficient evidence to establish premeditation, which is the essential element that distinguishes first- and second-degree murder. See Quintero, 21 F.3d at 890 n. 3.

. If Begay’s retrieval of his rifle from his truck which was parked nearby to O.C.’s car and his decision to approach the passenger's side window prior to shooting constitute "planning activity,” then it is difficult to imagine any actions in an intentional and deliberate murder (second degree) to which the term premeditated would not also apply.

. To the contrary, the record reflects that, despite his practice and experience with the weapon used during the shooting, and despite the fact that he was only three to four feet away from the victim when firing, Begay missed a number of times. This suggests, if anything, agitation, excitement, or frenzy, not the "cool mind” of premeditation.

. The majority does not contend that any inference of premeditation may be drawn from the fact that on the morning of the murder Begay had under the front seat of his truck a rifle that he ordinarily used for peaceful purposes. Loren Clark, the government’s only witness to the actual shooting, testified that he recognized the weapon that was being fired "[b]ecause [he] used to go shooting with [the defendant] and [they] shot this [particular] rifle a couple of times [before].” The mere fact that an individual has in his possession a weapon does not support premeditation if the weapon is one that he routinely carries for use in a legal or nonviolent fashion. "That [the defendant] used a knife to accomplish the murder is not probative of premeditation and deliberation because he did not procure it specifically for that purpose but rather carried it about with him as a matter of course.” Austin v. United States, 382 F.2d 129, 139 (D.C.Cir.1967), overruled on other grounds by United States v. Foster, 783 F.2d 1082, 1085 (D.C.Cir.1986). Nor, in the state of Montana, is possession in a vehicle of a rifle that is used for shooting as a form of outdoor activity.

. That the government was aware that it had an obligation to establish the manner in which Begay walked between the two vehicles is evident from its opening brief on appeal, in which it falsely asserted that Clark testified that he "watched as [the] defendant calmly returned to his truck” to retrieve the gun and "methodically retrieved the rifle.” Indeed, the government asserted seven times in its brief that the record contains evidence that Begay's demeanor was "calm” and asserted seven times that the record shows Begay was "methodical”; the government also asserted that the record shows Begay behaved "casually” and "thoughtfully.” However, as the government finally conceded under persistent questioning at oral argument during the three-judge panel, the record contains no support at all for any of these characterizations. That the government felt it necessary to rely on such unfounded assertions in order to attempt to demonstrate the sufficiency of its premeditation "evidence” demonstrates that it was well aware that the record did not contain sufficient evidence that Begay acted coolly and deliberately to sustain a conviction for first-degree murder. Perhaps the government would not have felt compelled to provide these false characterizations of Begay's behavior had it known that the majority would fail to uphold the principle that the government bears the burden of proof in a criminal trial, and would instead permit an inference that Begay acted calmly and methodically wherever he failed to affirmatively prove the opposite.

. Indeed, confusing premeditation with intent is exactly the mistake that the majority acknowledges the prosecutor made in his closing statement. See Maj. Op. at 1046 ("Intent is not the same thing as premeditation.”). That “mistake,” however, was far more important than the majority acknowledges. It may well have caused the jury to return a verdict of first-degree instead of second-degree murder.

. The majority’s is not an unusual method of decision making or opinion writing. There are, in fact, many such legal phrases that judges simply append to the statement of the facts before them in order to “explain” their decisions. This technique is not infrequently employed when judges purport to be evaluating what effect the evidence that a jury did not hear might have had upon its members had they heard that evidence.