STATE, PLAINTIFF-APPELLEE, *v.* LEWIS, JR.,
DEFENDANT-APPELLANT.

Ohio Appeals, Fourth District, Scioto County.

No. 726.   Decided June 25, 1962.

Mr. *Ernest G. Littleton,* for appellant.
Mr. *Everett Burton,* prosecuting attorney, for appellee.

COLLIER, J.   Clyde Lewis, Jr., the defendant-appellant here-in, was indicted by the Grand Jury of Scioto County, tried and found guilty by a jury of unlawfully assaulting another with a dangerous weapon in violation of Section 2901.241, Revised Code.   This statute reads as follows:

"No person shall assault another with a dangerous weapon or instrument or by other means or force likely to produce death or great bodily harm."

From the judgment overruling the motion for a new trial the defendant has appealed on questions of law to this court.

The facts shown by the record are as follows: At about 4 A. M. on May 10, 1961, in the Village of South Webster, Scioto County, Ohio, Mr. William Burnett saw an automobile stop between his house and the church next door. Three men got out of the car, took a satchel out of the trunk of the car and walked to the Simmering Grocery Store down the street. Approximately eight minutes later, one of them returned and drove the car behind the store. Mr. Burnett then had his wife call Mr. Floyd W. Hagan, a volunteer special deputy sheriff of Scioto County. Several dogs started barking and the three men got into the car and drove over into an area by the Davis Funeral Home nearby. They then got out of the car and came back through the alley toward the Simmering Store. Hagan drove up to the Burnett house, where Burnett pointed out the car and told him the men had crossed the street. Hagan pulled his car beside the parked car and instructed Burnett to call the sheriff. Prior to this, Hagan had observed a safe laying on the ground beyond the store. Hagan then opened the hood of the parked car and detached the ignition wires so it would be inoperable. Hagan was wearing his deputy sheriff's uniform.

Defendant-appellant appeared out of the darkness with a pistol in his hand pointed at Hagan and said, ''I will get you for tampering with my automobile.'' Defendant-appellant then said he had been seeing a woman whose husband was at work and he was in a hurry to get away. The other two men did not make an appearance and were thought by Hagan to be lurking nearby. Defendant-appellant ordered Hagan to raise the car hood and then he replaced the wires. He then got into the car and tried to start it without success. Hagan then told the defendant-appellant he was under arrest. Defendant-appellant ignored Hagan and got out of the car and tried again to fix the wiring.

Hagan then sat in the passenger side of the car with his feet out of the door hoping to detain the car. Defendant got back in the car and started it and drove down the road. When the car reached State Route 140, a short distance away, Hagan ordered the defendant to pull the car over to the side of the road. Defendant then pulled out a pistol and pointed it at Hagan—not more than eighteen inches away—and ordered him

to get in and shut the door. Both Hagan and Burnett described the gun as a 38 caliber automatic, about nine inches in length. Defendant then ordered Hagan to get down on his knees in the car. Defendant noticed Burnett following them in the Hagan car and stated to Hagan that if there was a two-way radio in his car and a roadblock was placed ahead of them, "You will be the first to die." Defendant drove the automobile at a high rate of speed for about seven miles until he came to his brother-in-law's home on the New Haven Road, which goes to Salter's Creek. During all this ride defendant held the gun on Hagan. The brother-in-law, a Mr. McGuire, came out of his house and the defendant and Hagan got out of the car. During the conversation that followed, defendant pulled back his coat and said to Hagan, "Draw," which Hagan refused to do. Thereafter, McGuire took the defendant away and Hagan went to call the sheriff's office.

These facts were elicited through the testimony of Hagan and Burnett, as the only witnesses in the case. The defendant did not testify nor produce any evidence. The weapon used was not introduced in evidence and there was no evidence as to whether the pistol was loaded or unloaded.

As we view the record, the four assignments of error raise the single question, whether the burden was on the State to prove that the pistol used by the defendant in the commission of the alleged crime was loaded. The defendant contends that an unloaded gun is not a dangerous weapon; that in order for a gun to be so classified, it must be loaded with a destructive substance and capable of being fired; that these facts are essential elements of proof of the crime charged in the indictment and in the absence of such proof, the defendant was entitled to an acquittal.

The defendant relies upon the law pronounced in the case of *Fastbinder* v. *State*, 42 Ohio St., 384, which held:

"In order to convict of shooting with intent to kill, it must be averred and proved that the gun was loaded with powder and a bullet or some other destructive substance, which, when discharged from the gun is calculated to produce death."

That case was decided in 1884 by a divided court when technicalities, especially in criminal cases, were closely observed. Prior to 1929, when the present criminal code was adopted in

444

Ohio, the common law practice was followed in criminal cases and indictments were long and complicated, describing in detail just how the alleged offense had been committed. In cases involving the use of guns, the indictment recited that the gun was then and there loaded with powder and ball and held in the right hand of the offender, that the gun was pointed at the victim and discharged and that the ball entered a certain part of the victim's body, then and there and thereby inflicting certain wounds, etc. The new criminal code simplified pleadings in criminal cases and, to some extent, the method of proof. By reason of the change in the statutory law, we do not feel bound by the decision in the *Fastbinder case.*

Section 2901.241, defining an assault with a dangerous weapon was enacted and became effective in Ohio on November 2, 1959. So far as we know, the term, "dangerous or deadly weapon" weapon has never been defined by an Ohio court, but has been the subject of litigation in many other jurisdictions. We quote from 4 American Jurisprudence, 145, section 34:

"The question most frequently arising on a prosecution for assault with a dangerous weapon is whether the weapon used comes within the meaning of a dangerous or deadly weapon. A dangerous or deadly weapon may be defined to be any instrument which will cause death or great bodily injury when used in the ordinary and usual manner contemplated by its design and construction. Some weapons under particular circumstances are so clearly lethal that it becomes the duty of the court to declare them to be such as a matter of law. Of this class of weapons are guns, revolvers, pistols, swords, and the like when used within striking distance of the victim; all others are lethal or not according to their capability of producing death or great bodily harm in the manner in which they are used."

And the same authority, 4 American Jurisprudence, 176, section 90, reads:

"Generally it is a matter of defense to show that the weapon was unloaded, rather than a substantive part of the state's case to aver and prove that it was loaded. In some jurisdictions a gun or pistol is presumed to be loaded in the absence of evidence that it was unloaded."

See also 74 A. L. R., 1209.

In our opinion the trial court properly refused to instruct

the jury, as requested by the defendant, that it was necessary for the state to prove that the pistol used by the defendant was loaded; that when a gun is used under such circumstances as shown by the evidence in this case, the presumption is that the gun is loaded, in the absence of evidence that it is unloaded; that the burden of proving it was unloaded was upon the defendant. To hold otherwise would place an impossible burden on the state and render the statute nugatory when a gun is used as a means of accomplishing the assault. Also in the absence of any evidence by the defendant that the gun was un-unloaded, the trial court was justified in instructing the jury on the effect of a loaded gun. The evidence in this case clearly establishes the defendant's guilt and any errors in the instructions to the jury are errors of omission and not commission and did not prevent the defendant from having a fair trial. The judgment of the Common Pleas Court must be and hereby is affirmed.

Judgment affirmed.

RADCLIFF, P. J., concurs.
BROWN, J., dissents.

BROWN, J., dissenting. Under the evidence presented there were several Ohio Statutes that the defendant no doubt violated. The question here is whether there was a lawful conviction of the defendant, whose actions patently display that he was no angel, under the statute the violation of which he was indicted, namely, Section 2901.241, Revised Code.

Section 2901.241, Revised Code, provides in part:

"No person shall assault another with a dangerous weapon or instrument or by other means or force likely to produce death or great bodily harm."

Section 2901.241, Revised Code, differs from Section 2901.-24, Revised Code, relating to simple assault, in that it predicates a greater penalty attached to the use of a dangerous weapon upon the means employed in the intimidation.

While there is some conflict as to whether, in the case of an assault, there must be an actual present ability to commit a battery, the better view seems to be that an apparent ability is enough. See Restatement, Torts, Section 33 and Harper and

James on Tort, 222. Since the right protected is that of the person attacked, the secret intention of the wrongdoer not to perform the threatened act or even his undisclosed inability to perform it, is not a legal excuse in a civil action. The criminal law is also designed to protect rights of the general public and the individual assailed, not merely to fix the moral guilt of the assailant. See Sayre, Criminal Attempts, 41, Harvard L. Rev., 821, 849.

The court's general charge in so far as it relates to the elements of the crime is as follows:

"On the 10th day of May in the year of our Lord one thousand nine hundred and sixty-one at the County of Scioto aforesaid did unlawfully assault another with a dangerous weapon, to-wit: Did threaten one Floyd W. Hagan with a gun. Contrary to Section 2901.241, Revised Code, and against the peace and dignity of the State of Ohio."

"The law as to an assault charged in the indictment is this: An assault is an attempt to commit a battery. In this connection I might say that the pointing of a loaded firearm by one person at another when within range of the firearm by one person at another when within the range of the firearm, that is, within such distance that if discharged the bullet could take effect upon such other person, that would constitute an assault."

"By the defendant's plea of not guilty there is cast upon the State the burden of proving each and every material fact necessary to make out this charge or constituting the crimes or offenses as charged and set forth in the indictment to your satisfaction, beyond reasonable doubt, from the evidence in this case, that the defendant is guilty of some particular crime or offense charged against him in and by this indictment, before you are justified in finding any verdict against him, and this involves such proof beyond reasonable doubt of each and all of the facts and things set forth and stated in the indictment which enter into and form a necessary part and ingredient of such crime or offense substantially as the same are charged in the indictment."

Section 2901.241, Revised Code was adopted by the legislature in 1950 to create the new offense of aggravated assault. It is apparent that they felt that the method of carrying out the assault was the most important new element added to create

the new crime and therefore the gravamen of the offense. An assault carried out "with a dangerous weapon or instrument, or other means or force likely to produce death or great bodily harm" was considered by the legislature to be of such a henious nature that it provided a felony penalty, whereas simple assault was still classified as a misdemeanor. See Section 2901.24, Revised Code.

The question of what is a dangerous weapon within the meaning of this statute was left unanswered by the legislature. Its meaning has not been previously passed on by the Ohio courts.

In *United States* v. *Williams*, C. C. 2 F., 61, 64, the court states "Whether a particular weapon is a deadly or dangerous one is a question of law. Sometimes, owing to the equivocal character of the instrument—as a belaying pin—or the manner and circumstance of its use the question becomes one of law and fact to be determined by the jury under the direction of the court. But where it is practicable for the court to declare a particular weapon dangerous or not, it is its duty to do so. A dangerous weapon is one likely to produce death or great bodily injury. A loaded pistol is not only a dangerous but a deadly weapon. The prime purpose of its construction and use is to endanger and destroy life. This is a fact of such general notoriety that the court may take notice of it."

In numerous cases, although there is no precedent in Ohio, "A dangerous weapon" is one which as used or attempted to be used may endanger life or inflict great bodily harm. *Price* v. *United States*, 9 Cir., 1907, 156 F., 950, 952; *United States* v. *Williams*, D. C. D. Or., 1880, 2 F., 61, 64; *Tatum* v. *United States*, 1940, 71 App. D. C., 393, 110 F. (2d), 555; *Medlin* v. *United States*, D. C. Cir., 1953, 207 F. (2d), 33, certiorari denied, 347 U. S., 905, 74 S. Ct., 431, 98 L. Ed., 1064; see also *Hopkins* v. *United States*, 4 App. D. C., 430, 442." Federal Supplement, 190.

Section 2945.11, Revised Code, provides in part: "In charging the jury, the court must state to it all matters of law necessary for the information of the jury in giving its verdict." The defendant in a criminal case is entitled to have the jury fairly instructed upon the law applicable to the evidence introduced, since he is entitled to a fair trial and can only have it in

case of proper instructions. The charge should include a simple and orderly statement of the issues of fact and the rules of law applicable and which will be helpful to the jury in the determination of the several issues of fact upon which their verdict is to be based. The judge must accurately instruct the jury as to questions presented by the indictment and the evidence, and must correctly represent the substantive law. It is the duty of the trial judge to tell the jury all the essentials which constitute the crime charged, and which the jury must find or sustain by the evidence beyond a reasonable doubt. 15 Ohio Jurisprudence (2d), 734, and cases cited thereunder.

It is apparent from reading the charge of the court that the jury was not instructed as to what constituted the most important element of the crime, i. e., the means by which the alleged assault was carried out, as set forth in the indictment; namely, a dangerous weapon. It was the duty of the court to define this element to the jury. At the close of the charge the defendant made a seasonable request for instructions on this subject which was denied by the trial court. This, I believe, to be prejudicial to the defendant. The jury should not have been permitted to assume that the weapon described in the evidence was of dangerous character without proper instructions. In his instructions the judge talked of the pointing of a loaded firearm by one person at another under certain circumstances would constitute an assault, but no where was there any definition of what constituted a dangerous weapon. It must be stated that no where in the evidence is there any indication that the gun was either loaded or unloaded, even though it is almost beyond the realm of human comprehension that any rational being would carry on a course of conduct of such a nature as described above before a uniformed deputy sheriff without the same being fit for the use for which it was made.

It is my opinion that the judgment of the trial court should be reversed, the verdict set aside, and the case remanded to the Common Pleas Court of Scioto County for further proceedings according to law.