**UNITED STATES of America**

v.

**John D. DANIELS, Appellant.**

**UNITED STATES of America**

v.

**Valentino O. WISEMAN, Appellant.**

**Nos. 22913, 22918.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 24, 1970.

Decided Oct. 15, 1970.

Petition for Rehearing Denied in No. 22,913 Nov. 10, 1970.

Mr. Edwin K. Hall, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Mr. Michael G. Kushnick, Washington, D. C. (appointed by this Court), for appellant in No. 22,913.

Mr. David S. Scrivener, Washington, D. C. (appointed by this Court), for appellant in No. 22,918.

Before TAMM, LEVENTHAL and WILKEY, Circuit Judges.

WILKEY, Circuit Judge:

Appellants were each convicted in a joint trial of assault with a dangerous weapon.[1] On this appeal both appellants allege that in each incident the government failed to prove an assault with a dangerous weapon, and Daniels further alleges prejudicial joinder with Wiseman. Finding no error in the trial, we affirm both convictions.

At approximately 7:50 p.m. of 29 June 1968, appellant Wiseman sought admittance to a liquor store at 14th and U Streets, N.W., Washington. Speaking through the glass door panel, the guard on duty, Watford, told Wiseman that the store was already closed. Whereupon, according to the guard's testimony, Wiseman pulled out a .32 or .38 caliber pistol from a rear pocket, pointed it at an oblique angle toward the guard on

1. 22 D.C.Code § 502.

the other side of the glass door, and stated that he would shoot him.

After calling the police, Watford, reinforced by another guard, Anderson, then went outside the store to detain Wiseman until the police arrived. At this time, according to Anderson's testimony, Wiseman reached to his right rear pocket, pulled a pistol and cocked it, and again made a threatening statement. Seeing the police arrive, Wiseman then ran to a doorway about 15 feet away, dropped the gun, and immediately thereafter was grabbed by Anderson.

At this point appellant Daniels, no doubt to his later regret, made his entrance on stage. Spying the pistol dropped in the doorway, Daniels retrieved it and scurried up the stairs of his lodging house. Anderson saw Daniels pick up the gun, told this to Officer Baker, who ran to the foot of the stairs, called out to Daniels, who wheeled and pointed a dark looking revolver at Baker.[2] Anderson saw the pistol and jumped back; Baker likewise saw the pistol and reacted by firing at Daniels, who thus spurred resumed his upward flight. Baker, joined by six reinforcements, pursued and found Daniels lying on a bed in a room, not his own. An intensive search for the

pistol was fruitless. The gun was never found.

On this set of facts Wiseman and Daniels were each charged with assault with a dangerous weapon and tried jointly. Wiseman's testimony was that he never had a gun, he denied that he had taken a gun out of his pocket when he was outside the store, denied that he said that he would shoot Watford. He explained that he had found the live .38 caliber cartridge which the police search removed from his pocket. Daniels also testified, and denied having a gun at any time. He denied pointing any weapon at Officer Baker or Anderson.

At the conclusion of all evidence appellant Wiseman requested a charge to the jury of the lesser included offense of simple assault in addition to the charge of assault with a dangerous weapon. The trial judge declined to charge on simple assault, saying that on the defense put forth by both appellants, that there was no gun at all, the appellants were either guilty of assault with a dangerous weapon or not guilty.[3] On appeal, Wiseman urges that the lesser included offense instruction should have been granted since the prosecution adduced no testimony at trial that the gun, testified to by both appellants as nonexistent, had been loaded.[4] Appellant

2. The testimony is in conflict as to whether the pistol used was actually a revolver or an automatic. Watford and Anderson testified that the weapon Wiseman flourished and then dropped in the doorway was an automatic, and Anderson described a weapon with the characteristics of an automatic pistol. Officer Baker, on the other hand, testified that he was sure that he had seen Daniels with a revolver, and that he was "almost sure" that it was not an automatic. In any event, Anderson clearly testified that the same gun that Wiseman had dropped was picked up by Daniels and was visible in Daniels' hand when he turned on the stairs in response to Officer Baker's command.

3. In denying the requested simple assault instruction the trial judge said:

Isn't it a question of whether he is guilty of assault with a dangerous weapon or whether he is innocent? I am not passing on the jury question. He says he did nothing; the complaining wit-

nesses say he threatened to shoot and pulled out a gun and cocked it; and it seems to the Court he is either guilty or innocent. I don't see what any lesser offense is.

I have considered this matter in preparing the charge, and I think there is no set of facts that the jury could consider on which they could reasonably find anything but guilt or innocence on the charge.

4. This specific ground for the giving of a simple assault instruction was not asserted by Wiseman's trial counsel. Rather, the contention at trial seems to have been that even if the jury believed Wiseman's position that he never had a gun, they might nevertheless find that the threats and related behavior (which he also denied) were sufficient to constitute a simple assault. We do not pause to consider, however, whether appellant is now precluded from urging error in denying the requested charge by his failure to state at

Daniels made no such motion for a charge of a lesser included offense, but since on this appeal he urges the same ground as Wiseman, no proof the pistol was loaded, we treat his case as if the request for the charge had been made and denied, as undoubtedly the trial judge would have done. Appellant Daniels also alleges prejudicial misjoinder with Wiseman.

### I. *Assault with a Dangerous Weapon*

On the facts of this case we find no need to decide the ultimate legal issue, that is, whether assault with an unloaded gun in circumstances where the gun cannot be used as a club is sufficient to sustain a conviction of assault with a dangerous weapon.[5] To hold that the trial court should have charged on simple assault as a lesser included offense would be to decide that an unloaded pistol is not a dangerous weapon, a point not yet ruled on in this circuit, and that a jury finding on the fact of the pistol being loaded or unloaded would determine whether the offense was assault with a dangerous weapon or simple assault. The pistol established as used in this case was never found; there is no evidence as to whether it was loaded or unloaded; the defense was that there was never any gun at all; we think the ultimate issue posed by the appellants can await the case in which at least the prosecution has a gun and the defense of an unloaded gun is squarely raised.

In regard to Wiseman, there were two instances of his allegedly having a gun in his hand; first, when he pointed it at an oblique angle through the glass door at Watford, and second, when he was outside the store and removed the gun from his right rear pocket and cocked it. According to Watford in the first instance and Anderson in the second, the handling of the gun was accompanied by threatening words. Obviously Wiseman's defense of no gun at all in his possession fell flat, and he therefore now attempts to argue that the lesser included offense charge should have been given on the theory that the gun (previously maintained to be nonexistent) was not shown by the prosecution to be loaded.

■■ We think the trial court properly denied the requested charge for two reasons. First, there was neither evidence nor any theory advanced by the defense as to an unloaded gun being in the case. Certainly the prosecution should be put on notice at a proper time in the trial that the defense is relying on such a theory. Certainly there can be no burden placed on the prosecution to satisfy the jury that a gun was loaded, if the defense throughout the evidence has been that no gun existed. Not only did the evidence fail to raise the issue, but the evidence logically precluded it and the requested charge.[6]

---

trial the specific ground now argued on appeal, since, in the circumstances of this case, we find his position untenable in any event.

5. Cases deciding this question in other jurisdictions have gone both ways, often turning upon the particular wording of the statute involved. *See* Annot., 79 A.L.R.2d 1412 § 6 (1961). *Compare* Randall v. United States, 215 F.2d 587 (9th Cir. 1954) *and* Hobbs v. State, 363 P.2d 357 (Alaska, 1961) *with* State v. Lewis, 186 N.E.2d 487 (Ohio App.1962); State v. Johnston, 207 La. 161, 20 So.2d 741 (1944) *and* People v. Williams, 6 Mich.App. 412, 149 N.W.2d 245 (1967).

6. We do not, of course, mean to suggest that a defendant in a criminal case is not en-

titled to submit inconsistent defenses to the jury. Rather, we recognize the rule to be that "a defendant is entitled to an instruction on any issue *fairly raised* by the evidence, whether or not consistent with the defendant's testimony or the defense trial theory." Womack v. United States, 119 U.S.App.D.C. 40, 336 F. 2d 959 (1964) (emphasis added). *See* Broughman v. United States, 124 U.S. App.D.C. 54, 361 F.2d 71 (1966); Young v. United States, 114 U.S.App.D.C. 42, 309 F.2d 662 (1962). However, we think the instant case is governed by our analysis in Belton v. United States, 127 U.S. App.D.C. 201, 206–207, 382 F.2d 150, 155–156 (1967). *Belton* establishes that in order for a lesser included offense instruction to be proper, there must be

Second, the .38 caliber cartridge found in Wiseman's pocket made the gun a dangerous weapon, even if there had been no cartridge in the chamber, a question which the facts of this case left unanswered. Wiseman admitted the possession of the .38 caliber cartridge. The jury rejected Wiseman's testimony that he never had a gun in his possession. The jury could only have found Wiseman guilty of assault with a dangerous weapon by rejecting his testimony that he never had a gun, and in this case any challenge to this verdict on the question of whether the gun was or was not a dangerous weapon is precluded by the admitted presence of the .38 caliber cartridge in Wiseman's pocket.

As to Daniels, his defense that he never had a pistol in his possession was likewise necessarily rejected by the jury when they found him guilty of assault with a dangerous weapon. One witness, Anderson, saw Daniels pick up the gun, and two witnesses, Anderson and Officer Baker, saw Daniels pointing the gun. Anderson was sure enough that he saw the pistol in Daniels' hand to leap back out of harm's way; Officer Baker was sufficiently impressed by what he saw to fire a shot at Daniels.

It is true that no gun was found after a rigorous search of the apartment in which Daniels was apprehended, but Daniels encounters difficulties in establishing the defense that the gun was not loaded and therefore he could not be convicted of assault with a dangerous weapon.

We therefore hold that the failure to charge on the lesser offense was proper and sustain the conviction of Daniels for assault with a dangerous weapon. Assuming the facts as established by the government's evidence in accordance with the jury's verdict, Daniels was a finder of the pistol and almost instantly attempted to employ the weapon. Daniels had no knowledge and in the brief time span of events no opportunity to acquire knowledge as to whether the pistol was loaded or unloaded. Therefore, Daniels had to act on the assumption that the gun was loaded. He could not without grave risk to the life of anyone at whom the weapon was pointed act as if the gun were unloaded. Officer Baker and Anderson were in a similar situation; they had to assume that the gun was loaded, and since both knew Daniels had just picked up the gun in the doorway, they knew that Daniels did not know whether it was loaded or not. This combination of circumstances is sufficient for us to say that the pistol involved must, in Daniels' case, be presumed to have been loaded, and that in view of the fact that the pistol was never found, conduct of all handling the gun or threatened by it must be judged on the assumption that it was loaded. On this basis, then, aside from the fact that Daniels' defense was he never had any gun, we think the conviction for assault with a dangerous weapon must be sustained.

## II. *Improper Joinder*

■ Daniels' second claim is that his conviction should be reversed because his case on assault with a dangerous weapon was improperly joined with that of appellant Wiseman.[7] While a cast of

---

evidence "fairly tending" to bear on such an offense to the extent that "the trial court will be reasonably alerted to the factual predicate underlying the instruction requested." 127 U.S.App.D.C. at 207, 382 F.2d at 156. In the words of *Belton*: "Here the testimony did not 'fairly tend' to bear on [simple assault] and we cannot assign reversible error to the failure of the trial court to glean and array on its own motion the strained possibilities of events put forward by counsel who have mulled over the appeal, but not advanced at trial either by defense counsel or the witnesses." *Id.*

7. Rule 8(b), Federal Rules of Criminal Procedure provides:
   *Joinder of Defendants.* Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

varied characters being brought together by their relationship to a common object has often made the plot of a single play or novel, it is certainly arguable that the consecutive use or misuse of a single dangerous weapon by different persons should not be made the subject of a single trial. Even if there was a misjoinder of defendants here, however, appellant Daniels made no motion for severance either prior to, or during the trial.[8] By not so doing he "so waived any rights under Rule 8. Rule 12(b) (2), F.R.Crim.P." and there is no cause for reversal unless the "defendant was so seriously prejudiced that not ordering a severance was an abuse of discretion."[9]

■ We do not think Daniels could have been prejudiced by the trial alongside Wiseman, even if the joinder were improper. Fundamentally, there was no prejudice because, aside from the fact that the jury was instructed to consider only evidence introduced against each appellant separately, any trial of Daniels would have required the introduction of most of the evidence in regard to Wiseman that was offered by both the prosecution and by Daniels in his own defense. Appellant Daniels' own brief finds it difficult to discuss his case without referring to the facts about Wiseman. His brief states, "The allegations against appellant arise out of an incident in which Wiseman, but not appellant, was involved. Consequently it becomes necessary to set out herein the facts relating to Wiseman, so that the evidence pertaining to appellant may be viewed in its proper perspective." Both the prosecution and the defense would have found precisely the same difficulty in a separate trial of appellant Daniels.

Daniels complains particularly of the cartridge found in Wiseman's pocket. The cartridge in the circumstances of its finding could have been introduced against Daniels directly, even if separately tried. Daniels' defense was he never had a gun. The prosecution's case rested on testimony that Daniels had picked up the gun which Wiseman had dropped in the apartment entryway. Wiseman's possession of the cartridge was relevant to show that he also possessed the gun (which Wiseman denied), and Wiseman's possession of the gun was in turn relevant to corroborate Anderson's testimony that he saw Wiseman drop a gun and Daniels immediately pick it up.

Nor was Daniels hampered by his codefendant Wiseman's inability to conduct a "far-sweeping examination" in order to refute "adverse testimony concerning the revolver," as Wiseman suffered from the embarrassment of a prior conviction on another gun charge. Wiseman himself took the stand and was therefore subject to cross examination by Daniels, as wide as he would have been if the two had been tried separately. We see no prejudice resulting from this joinder, certainly not the kind of serious prejudice which would have made it an abuse of discretion for the judge to have failed to act sua sponte under Rule 14 to accord a separate trial.

Both convictions are therefore affirmed.[10]

8. Rule 14 Fed.R.Crim.P.

9. Cupo v. United States, 123 U.S.App.D.C. 324, 327–328, 359 F.2d 990, 993–994 (1966). Conversely, where defendants are improperly joined and a motion to sever is denied, prejudice is presumed. Ward v. United States, 110 U.S.App.D.C. 136, 289 F.2d 877 (1961); Ingram v. United States, 272 F.2d 567 (4th Cir. 1959).

10. We find the remaining point urged by appellant Daniels also without merit. Daniels argues that there was insufficient evidence of an overt act on his part to let the case on assault with a deadly weapon go to the jury. This argument turns essentially on the suggestion that assuming that Daniels had a gun, his physical position when he turned around on the stairs was responsible for the pointing of the gun at Officer Baker, and not any volitional act on Daniels' part. Such an argument is for the jury; it is not available to appellant here. To the extent that this point also alleges an inadequacy of the instructions on the necessity of finding an overt act, we note that no such objection was made at trial, and, on this record, we are not disposed to find plain error. Fed.R.Crim.P. 30, 52.